## Richmond.

### MUSCOE v. COMMONWEALTH.

#### February 12th, 1891.

1. CRIMINAL PROCEEDINGS—*Change of venue.*—Prisoner indicted for murder made affidavit that he could not have an impartial trial by reason of prejudice against him, and presented extracts from newspapers alleging his guilt. Witnesses testified that not greater than the usual prejudice existed, and that in their opinion a fair trial could be had: *held*, change of venue properly denied.

2. IDEM—*Venire facias.*—Though writ of *venire facias* has been exhausted by the answers of the *venire* men, yet it should be quashed for irregularity on its face, as such writ is, in legal intendment, no process at all. But where the quashing was done on prisoner's own motion: *held*, no ground for reversal.

3. IDEM—*Instruction—Harmless error.*—Judgment will not be reversed for giving an erroneous instruction, which, it appears, could not have prejudiced the prisoner.

4. IDEM—*Prisoner's declarations.*—Declarations of accused, made just before the homicide, that " he felt like killing some one ": *held*, admissible to show his *animus*.

Error to judgment of corporation court of city of Charlottesville, rendered at the February term, 1890, on an indictment against the plaintiff in error, William Muscoe, for the murder of G. T. Seal. This is the sequel to the case of *Muscoe v. Commonwealth*, 86 Va., 443. On former appeal, judgment was reversed and a new trial awarded for errors in the third and fourth instructions given by the trial court. The prisoner was again tried and found guilty of murder in the first degree, and sentenced to be hanged therefor March 24th,

1890.   Thereupon prisoner obtained a writ of error.   Opinion states the case.

*James H. Hayes* and *Samuel M. Page*, for the plaintiff in error.

*Attorney-General R. Taylor Scott*, for the Commonwealth.

HINTON, J., delivered the opinion of the court.

In this petition several grounds of error are set out, which will be considered in the order of presentation.

Of these assignments of error, the first and most important is based upon the action of the corporation court in over-ruling the prisoner's motion for a change of *venue*.   After he had been arraigned, and had submitted a motion for a change of *venire*, which was overruled, he moved for a change of *venue*, and in support thereof filed his affidavit with certain exhibits.   In his affidavit, he expressed the belief that there existed such prejudice against him in the city of Charlottes-ville and its vicinity, that it would be impossible for him to obtain a fair and impartial trial and verdict at the hands of a jury of that city or community.   That during the time of his previous trial, and since, various rumors and newspaper reports of his case had been circulated throughout the city and county to such an extent that nearly every citizen had expressed a decided opinion, or fully made up his mind as to his guilt or innocence, and in nearly every case to his preju-dice.   He calls especial attention to a card of S. B. Wood, the mayor of Charlottesville, published soon after his arrest, and circulated in the "*Chronicle*," a newspaper published in said city, wherein the mayor stated that the affiant was the man who had committed the murder, and called upon the citizens to desist from any attempt to break the law, by lynching the affiant, and assuring the public that the affiant would be hung in thirty days after sentence was passed upon.   He also ex-

hibits certain extracts from the same local paper, which do not seem to us to have the weight attributed to them by the counsel for the prisoner, and to which we do not deem it necessary further to allude. In opposition to this motion, the Commonwealth introduced several witnesses, who testified substantially as follows: That the prejudice against the prisoner was not greater than is usual in similar cases, or than it had been in the cases of Martin and Morgan, who had been tried for like crimes but a short time before; that the feeling against the prisoner had abated since the first trial, and that they were satisfied that the prisoner could obtain a fair and impartial trial in the city of Charlottesville.

Now, upon this state of facts, has the prisoner shown himself to be legally entitled to a change of *venue?*

The reasons for having crimes tried in the locality wherein they have been committed are both weighty and obvious, and a criminal case, therefore, ought not to be sent elsewhere for trial, unless it is made to appear to the court in which the case is pending, that a trial in the vicinage is likely to result in a miscarriage of justice—that is, the community has been so warped by passion or prejudice that there is danger of the jury being influenced by the opinions and prejudice of the public, and not entirely and exclusively by the evidence, in reaching a verdict. As was said by Judge Daniel, in *Wormley's Case*, 10 Gratt., 672, it may be safely affirmed, that the mere affidavit of the prisoner of his fears or belief that he cannot obtain a fair trial in the county is not sufficient to sustain the motion; but that he should be required to show, by independent and disinterested testimony, such facts as make it appear probable at least, that his fears and belief are well founded. On the other hand, when such facts are stated and shown by the prisoner, and not successfully opposed or explained on the part of the Commonwealth, no arguments of inconvenience or delay should be permitted to stand in the way of the great end to be attained—a fair and impartial trial.

Coming now to the evidence in favor of this application, and admitting that some of the utterances, upon which so much stress was laid by the counsel for the prisoner, were both ill-judged and ill-timed, yet it does not seem to us, after a careful consideration of all that has been said, that such a foundation was laid for the motion as made it incumbent on the trial judge to send the case to some other court. The discretion in questions of this character has been vested by the legislature in the trial judge, and there is nothing in the record that satisfies us, or renders it even probable, that it has been abused or unwisely exercised in this instance, and it is only in cases of the kind last mentioned that he should be overruled by this court.

The next ground of exception is, that after one juror from *venire facias* No. 2 had been found free from legal exceptions, the court, upon the motion of the prisoner's counsel, quashed the same for an error upon its face, and discharged the juror. But in our judgment this objection is clearly untenable. What the irregularity was for which this *venire facias* was quashed does not appear, but it does appear that it was quashed at the instance of the prisoner's counsel. Nor does he now assert that it was not irregular, but he insists that the *venire facias*, having been exhausted by the answer of the *venire* men therein named, that its mission and life were ended, and there was nothing left in it to quash. In this we do not concur. It, the *venire facias*, was either a valid or an invalid writ; and if the latter, as we must assume under the circumstances of the case it was, then it was ineffectual for any purpose, and as soon as that fact was pointed out it became the duty of the court to quash the writ and to discharge the single juror who had been brought in under it. To constitute the supposed juror a lawful juror it was necessary that he should be brought in by proper process, and a *venire facias* so irregular that it must needs be quashed, in legal intendment,

is no process at all. *Spurgeon's Case*, 652; *Hall's Case*, 80 Va., 555.

The next objection is, that the court erred in amending instruction 9 by the addition of the words, "But if the killing be with a deadly weapon, and be done in a very cruel manner, not at all justified by the nature of the arrest, the inference would be that malice, not passion, impelled the blow, making his crime murder"; and also in giving the addition to instructions 5, 7, and 8, which is in similar, but more guarded language, and also in giving instructions 11 and 12, which the court gave of its own motion. But after calm reflection upon the subject, the court is of opinion that whilst the addition to instruction 9 is open to criticism, and, perhaps, ought not generally to be given in that form, yet that, as the record shows that it could not have prejudiced the prisoner, it constitutes no ground for reversing the judgment. The addition to instructions 5, 7, and 8 is justified by the statements of law in *Briggs' Case*, 82 Va., 554, and *Muscoe's Case*, 86 Va., *supra*. The evidence to justify the giving of instruction 11, though slight, was sufficient, and instruction 12 is unobjectionable. This assignment of error therefore fails.

The next complaint is, that the court improperly permitted a witness to testify that "just before sundown" upon the evening of the day upon which the homicide was committed, and when he was parting with him, that the prisoner said: "Buster, I feel hot; I feel like I could shoot a man and make him jump so high before he touches the ground" (indicating the height by his hand), and also that when he (Buster) told the prisoner good bye and bade him take care of himself, that he (the prisoner) said: "Don't tell me to take care of myself. Tell the people that I pass by to take care of themselves." We are of opinion that this testimony was properly admitted. Coming, as it did, almost immediately before the killing, it shed light upon the condition of the prisoner. It may not be admissible strictly as evidence of intention or of

threats, but it certainly shows that the prisoner was in a reckless frame of mind and ready to use the weapon with which he was armed upon none or the most trifling provocation. Whart. Cr. Ev., sec. 756; 50 Penn. St., 9; *Burke* v. *State*, 71 Ala., 385.

Upon the merits the case is clearly with the Commonwealth. The evidence is certified, and if we reject, as we must, all the evidence for the prisoner in conflict with the evidence for the Commonwealth, and consider the case, as we must, under section 3484 of the Virginia Code, 1887, as "on a demurrer to evidence by the party excepting," it makes out a case in which the jury might reasonably conclude that the killing was the result of both premeditation and malice. There does not appear to be the slightest evidence of either passion or even indignation on the part of the prisoner. On the contrary, the jury might reasonably infer from all the antecedent and attendant circumstances that the killing proceeded from an utter disregard for human life, and not from that passion or excitement which reduces the killing in such cases to manslaughter. 2 Bish. Crim. Law, 699, 652; *Briggs' Case*, 82 Va., 554; *Muscoe's Case*, 86 Va., 443.

We find no error in the judgment of corporation court of the city of Charlottesville, and the same is affirmed.

FAUNTLEROY, J., dissented.

JUDGMENT AFFIRMED.