COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Alston
Argued at Alexandria, Virginia

MARIA DE LAS MERCEDES TIZON

                                                                OPINION BY
v.        Record No. 1967-10-4                          JUDGE D. ARTHUR KELSEY
                                                                APRIL 3, 2012

COMMONWEALTH OF VIRGINIA

                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Dennis J. Smith, Judge

            Peter D. Greenspun (Greenspun Shapiro, PC, on brief), for
            appellant.

            Josephine F. Whalen, Assistant Attorney General II
            (Kenneth T. Cuccinelli, II, Attorney General, on brief), for
            appellee.


        A jury convicted Maria De Las Mercedes Tizon of second-degree murder and use of a

firearm in the commission of a felony. On appeal, Tizon challenges the sufficiency of the

evidence, the denial of her mistrial and suppression motions, and two jury instructions. Finding

none of Tizon's challenges persuasive, we affirm her convictions.

                                                I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted). In determining whether there is sufficient evidence

to sustain a conviction, moreover, an appellate court must consider "all the evidence" admitted at

trial that is contained in the record. Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)).

From this perspective, the evidence at trial proved Tizon referred to Ahmed Chouaib as her boyfriend. In early 2009, Tizon told a neighbor that her boyfriend had hit her after a quarrel. In July 2009, Tizon purchased a .38 caliber revolver and a box of ammunition. Five weeks later, on August 15, 2009, Tizon shot Chouaib to death in her condominium. One shot hit him in the side, the other in the back. Either wound, a medical examiner testified, would have been fatal. The medical examiner also determined the revolver was fired less than three feet from Chouaib's body.

After shooting Chouaib, Tizon went to her neighbor's condominium. Visibly upset, Tizon said she had just killed her boyfriend and showed her neighbor the revolver she used to shoot him. The neighbor took Tizon inside and called 911. During the call, the neighbor asked Tizon if Chouaib had hurt her. Tizon said he "hit" or "pushed" her "in the heart." App. at 631-32. While saying this, Tizon placed her hand on her chest in a pushing motion.

Accompanied by other officers, Fairfax County Police Officer William Coulter arrived while the neighbor was still on the phone with the 911 operator. Armed with a shotgun in the "ready position," id. at 711, Officer Coulter first attempted to determine the location of the revolver. The neighbor pointed to the handgun which Tizon had dropped outside the residence. Officer Coulter then asked what had happened. In reply, the neighbor relayed Tizon's statement that she had just shot her boyfriend. "He messed with my head," Tizon added. Id. at 697. Tizon appeared to the officer to be distraught but physically unharmed.

The neighbor then directed the officer to Tizon's residence. Officer Coulter found Chouaib on the floor, motionless, with a bullet hole in his chest. Concluding Chouaib was

probably dead, Officer Coulter allowed other officers to secure the murder scene. He returned to the neighbor's condominium to speak with Tizon. Officer Coulter holstered his shotgun in a sling on his back so it was no longer visible to the neighbor. He asked again what was "going on" and whether everyone was okay. Id. at 702. The neighbor again told him Tizon had said she shot her boyfriend. Tizon interjected, "He messed with my head. He takes my car and never returns it." Id. at 703. She repeated this explanation two or three times. Seeing no evidence that Tizon had been attacked or injured, Officer Coulter arrested Tizon and read her Miranda warnings.[1]

Officer Coulter secured Tizon in a police cruiser and later drove her to the station house. En route, Tizon volunteered, "He takes my car. He messes with my head." Id. at 705. During this time, the officer asked no questions of Tizon.

At the police station, a detective again read Tizon her Miranda rights. Tizon asked for a Spanish translator. She also asked to use the bathroom. The detective tested Tizon's hands for gunshot primer residue and called for a female officer. Before going to the bathroom, Tizon asked for a lawyer. Accompanied by a female officer in the bathroom, Tizon said she was dizzy, her heart was racing, and she found it difficult to breathe. The female officer called for a rescue squad and waited with Tizon in the bathroom. During the wait, the female officer asked Tizon about her physical condition but asked no questions concerning the investigation. Tizon nonetheless volunteered additional incriminating statements before the rescue squad arrived and transported her to the hospital.[2]

---

[1] See App. at 388 ("[H]e said to Maria, 'Maria . . . I'm going to place you under arrest,' . . . and then he began to read her, rights" starting with "you have the right to remain silent . . . .").

[2] Tizon's counsel asserts on brief that Tizon made incriminating remarks while she was in the restroom because the female officer "asked her about the incident and what happened." Appellant's Br. at 8. At the suppression hearing, however, the officer repeatedly testified

Back at the scene of the crime, investigating officers observed no signs of a struggle. They found the box for Tizon's revolver along with a box of bullets. When purchased, the ammunition box contained fifty bullets. Only forty-five bullets were still in the box. Tizon used two bullets to kill Chouaib and three remained in the cylinder of Tizon's revolver. No other weapons or ammunition were found in Tizon's residence.

At trial, a weapons expert testified Tizon's revolver could be fired in only two ways. Tizon had to either cock the hammer and thereafter squeeze the trigger (the single action method), or she could squeeze the trigger hard enough to bring back the hammer and release it (the double action method). The single action method required three and one-half pounds of pressure on the trigger, while the double action required fourteen pounds of pressure. In neither scenario could a single squeeze of the trigger fire two rounds. The revolver was also equipped with an internal safety device, referred to as a transfer bar, which prevented the handgun from accidently firing if dropped or knocked about.

A jury convicted Tizon of second-degree murder and of using a firearm to commit the murder. She now appeals to us, contending:

- the evidence was insufficient to prove her guilt;

- the trial court should have declared a mistrial because the prosecutor improperly commented on her invocation of the right to counsel;

- the trial court should have suppressed her incriminating statements to police because she was arrested without probable cause and her statements to the police violated her <u>Miranda</u> rights; and

- two of the jury instructions misstated the law.

---

Tizon's remarks were "spontaneously" made, App. at 420, and not in response to any questions about the investigation, <u>id.</u> at 422, 432.

II.

A. SUFFICIENCY OF THE EVIDENCE

An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)); see also Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (reaffirming Jackson standard).[3] "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Williams, 278 Va. at 193, 677 S.E.2d at 282 (quoting Jackson, 443 U.S. at 319). Thus, when a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). Suffice it to say, an "appellate court is no substitute for a jury." Id.[4]

This deferential appellate standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010); see also Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*). Thus, a factfinder

---

[3] See also Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010); Prieto v. Commonwealth, 278 Va. 366, 399, 682 S.E.2d 910, 927 (2009); McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

[4] It has long been deemed "an abuse of the appellate powers . . . to set aside a verdict and judgment, because the Judges of this Court, from the evidence as written down, would not have concurred in the verdict." Hill v. Commonwealth, 43 Va. [2 Gratt.] 594, 602 (1845). Virginia courts "have said on many occasions, '[I]f there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Courtney v. Commonwealth, 281 Va. 363, 368, 706 S.E.2d 344, 347 (2011) (citation omitted).

may "draw reasonable inferences from basic facts to ultimate facts," Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004) (citation omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

Applying this standard of review, we find ample evidence supporting the jury's verdicts finding Tizon guilty of second-degree murder and of using a firearm during the commission of that murder. "In Virginia, every unlawful homicide is presumed to be murder of the second degree." Pugh v. Commonwealth, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982). "Murder at common law is a homicide committed with malice, either express or implied." Id.; see also Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997). Second-degree murder does not require a specific intent to kill. See Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989). "It is quite clear that one may slay maliciously without actually intending to kill." Ronald J. Bacigal, Criminal Offenses and Defenses 339 (2011-12). If he acts with malice, the accused need only intend "to perform the conduct" causing the victim's death. Id. at 340.

Malice inheres in the "doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). "Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken.'" Canipe, 25 Va. App. at 642, 491 S.E.2d at 753 (quoting Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984)). It necessarily follows that malice may be "inferred from the deliberate use of a deadly weapon." Luck v. Commonwealth, 32 Va. App. 827, 834, 531 S.E.2d 41, 44 (2000); see also Tucker v. United States, 151 U.S. 164, 169-70 (1894) ("By the common law, . . . malice may be implied from the use of a deadly weapon.").

In this case, Tizon purchased a handgun five weeks before using it to kill her boyfriend. She fired twice at point blank range, once in the right side of his chest and once in his back. Because the handgun was a revolver, its trigger had to be manually squeezed for each shot. Because of its safety features, the revolver could not accidentally fire even once, much less twice. Tizon admitted she killed her boyfriend and repeatedly explained her motive: "He messed with my head. He takes my car and never returns it." App. at 703. The scene of the homicide revealed no evidence of a struggle. Nor was there any indication that her boyfriend was armed. In its totality, the evidence justifies the jury's conclusion that Tizon maliciously killed her boyfriend.

On brief, Tizon argues the jury arbitrarily rejected the hypothesis that the shooting was an "accident" in which Tizon's boyfriend was "handling the gun" and somehow ended up getting shot twice (including once in the back) during a "struggle between the parties." Appellant's Br. at 15. We disagree.

Under settled principles, "the Commonwealth need only exclude reasonable hypotheses of innocence that *flow from the evidence*, not those that spring from the imagination of the defendant." Scott v. Commonwealth, 55 Va. App. 166, 172, 684 S.E.2d 833, 837 (2009) (*en banc*) (emphasis added and citation omitted). No evidence suggested Tizon accidentally shot her boyfriend during a struggle. Moreover, even if some evidence supported this theory, "the reasonable-hypothesis principle is not a discrete rule unto itself." James v. Commonwealth, 53 Va. App. 671, 681, 674 S.E.2d 571, 576 (2009) (quoting Haskins, 44 Va. App. at 8, 602 S.E.2d at 405). "Whether the hypothesis of innocence is reasonable is itself a 'question of fact,' subject to deferential appellate review." Cooper v. Commonwealth, 54 Va. App. 558, 573, 680 S.E.2d 361, 368 (2009) (quoting Clanton, 53 Va. App. at 572-73, 673 S.E.2d at 910).

Stated another way, "[m]erely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Clanton, 53 Va. App. at 573, 673 S.E.2d at 910 (quoting Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964)).  Thus, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found the incriminating evidence renders the hypothesis of innocence unreasonable." James, 53 Va. App. at 682, 674 S.E.2d at 577 (citing indirectly Hudson, 265 Va. at 513, 578 S.E.2d at 785).  In practical terms, this means that — even if not "*inherently* incredible" — a defendant's exculpatory version of events need not be accepted by the factfinder.  Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980).

For these reasons, a rational factfinder could find Tizon guilty beyond a reasonable doubt of second-degree murder and of using a firearm during the commission of that murder.

## B. REQUESTS FOR MISTRIAL

Tizon contends the prosecutor "made deliberate reference on multiple occasions throughout the trial to [her] assertion of her right to counsel." Appellant's Br. at 19.  She claims these improper remarks occurred during the prosecutor's opening statement, during her direct examination of one of the detectives, and during closing argument.  Id. at 21.  The trial court erred, Tizon contends, by not declaring a mistrial.  We again disagree.

The prosecutor's opening statement advised the jurors that Tizon "made no statements" at police headquarters.  App. at 615.  Tizon's counsel did not object to this remark, ask for a curative instruction, or request a mistrial.  Counsel later explained he chose not to do so for tactical reasons.  See id. at 1547; Oral Argument Audio at 10:23 to 10:43.  "A motion for a mistrial 'must be made at the time an objectionable element is injected into the trial of the case.'

It is too late to move for a mistrial after the Commonwealth and defense have rested, after the jury has retired, or at the conclusion of counsel's opening or closing statement." Ronald J. Bacigal, Criminal Procedure § 17:26, at 545 (2011-12) (footnotes omitted). Having made no timely motion for a mistrial, Tizon waived any appellate challenge to the prosecutor's allegedly improper remark during opening statement.

During the testimony of one of the detectives, the prosecutor asked: "While you were in there collecting the [gunshot residue] did she say anything at that time?" App. at 787. The detective answered, "Yeah. She asked – she wanted an attorney." Id. Tizon's counsel objected to the detective's statement and moved for a mistrial. The trial court sustained the objection and instructed the jury:

> A person who is in custody and is being questioned regarding possible criminal behavior has an absolute right to refuse to answer questions and to have the assistance of an attorney. Any request by that person to have an attorney is an assertion of that absolute constitutional right. And that – and you shall not draw any inference or conclusion or negative connotation from such a request.

Id. at 794-95. The trial court denied the motion for a mistrial, however, concluding the curative instruction sufficed to address Tizon's objection.

We find no error in the trial court's decision to deny the motion for a mistrial under these circumstances. Except in the rarest of cases, criminal judgments will not be reversed for "the improper admission of evidence that a court subsequently directs a jury to disregard because juries are presumed to follow prompt, explicit, and curative instructions." Elliott v. Commonwealth, 267 Va. 396, 418, 593 S.E.2d 270, 284 (2004) (citation omitted).[5] "Whether

_____

[5] "As we have stated in the past, '[a] jury is presumed to have followed the instructions of the trial court.'" Prieto v. Commonwealth, 283 Va. 149, 169, 721 S.E.2d 484, 496 (2012)

improper evidence is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case," id., subject to the "most deferential standard of appellate review," Smith v. Commonwealth, 48 Va. App. 521, 531, 633 S.E.2d 188, 193 (2006).

These principles apply to objections concerning requests for counsel no less than any other objectionable evidence. See Pulley v. Commonwealth, 31 Va. App. 600, 602-06, 525 S.E.2d 51, 52-54 (2000) (distinguishing between objectionable "right to counsel" testimony erroneously *admitted* into evidence, e.g., Doyle v. Ohio, 426 U.S. 610 (1976), and the same type of testimony *excluded* from evidence, e.g., Greer v. Miller, 483 U.S. 756 (1987)). Because the record reveals no reason to doubt the efficacy of the trial judge's curative instruction in this case, we reject Tizon's argument that the trial court erred by not declaring a mistrial.

Finally, Tizon claims the prosecutor improperly stated during closing argument that "the evidence as a whole must exclude every reasonable theory of innocence," and "I submit there hasn't been a reasonable theory of innocence yet." App. at 1459. Tizon's counsel objected to this remark but did not timely request a cautionary instruction or move for a mistrial. "When contesting a prosecutor's allegedly improper argument, a 'timely motion for a mistrial or a cautionary instruction is required to preserve the issue for appeal even if an objection was properly made to the conduct or comments and improperly overruled by the trial judge.'" Thomas v. Commonwealth, 44 Va. App. 741, 751 n.2, 607 S.E.2d 738, 742 n.2 (citation omitted), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).[6]

_____

(quoting Muhammad v. Commonwealth, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005)); see also Seaton v. Commonwealth, 42 Va. App. 739, 750, 595 S.E.2d 9, 14 (2004).

[6] Given our holding, we need not address whether Tizon's argument conflates impermissible comments on the right to remain silent with permissible comments on an unrebutted *prima facie* case. See Powell v. Commonwealth, 167 Va. 558, 566, 189 S.E. 433, 436 (1937); Pollino v. Commonwealth, 42 Va. App. 243, 250, 590 S.E.2d 621, 625 (2004).

## C.  DENIAL OF SUPPRESSION MOTIONS

When reviewing a denial of a suppression motion, we review the evidence "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  This standard requires us to "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation omitted).  In doing so, we "consider facts presented both at the suppression hearing and at trial." Morris v. City of Va. Beach, 58 Va. App. 173, 176, 707 S.E.2d 479, 480 (2011) (citation omitted).

### (i)  *Probable Cause to Arrest Tizon*

Before trial, Tizon moved to suppress all incriminating evidence discovered after her arrest because probable cause did not justify the arrest.  We find this argument meritless.

As we recently observed, the "very phrase 'probable cause' confirms that the Fourth Amendment does not demand all possible precision." Joyce v. Commonwealth, 56 Va. App. 646, 658, 696 S.E.2d 237, 243 (2010) (quoting Herring v. United States, 555 U.S. 135, 139 (2009)).  Courts employ a "common sense approach" and not a "hypertechnical, rigid, and legalistic analysis" when reviewing probable cause determinations. Powell v. Commonwealth, 57 Va. App. 329, 335-36, 701 S.E.2d 831, 833 (2010) (citation omitted).  The standard is not calibrated to "deal with hard certainties, but with probabilities." Slayton v. Commonwealth, 41 Va. App. 101, 106, 582 S.E.2d 448, 450 (2003) (citation omitted).  Nor does it "demand any showing that such a belief be correct or more likely true than false." Joyce, 56 Va. App. at 659, 696 S.E.2d at 243 (quoting Slayton, 41 Va. App. at 106, 582 S.E.2d at 450).

Consequently, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted); United States v. Ortiz, 669 F.3d 439, 446 (4th Cir. 2012) (holding probable cause "is less demanding than a standard requiring a preponderance of the evidence"). Not even a "*prima facie* showing" of criminality is required. Joyce, 56 Va. App. at 659, 696 S.E.2d at 243 (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)). Instead, probable cause "requires only a probability or substantial chance of criminal activity, *not an actual showing of such activity*." Gates, 462 U.S. at 243 n.13 (emphasis added). "The Constitution," after all, "does not guarantee that only the guilty will be arrested." Joyce, 56 Va. App. at 659, 696 S.E.2d at 243 (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction." Id. (quoting Slayton, 41 Va. App. at 107, 582 S.E.2d at 451). "In other words, even though probable cause means more than a 'mere suspicion,' it is not necessary for the facts to be 'sufficient to convict' the accused of the offense." Id. at 659-60, 696 S.E.2d at 243. "Unlike a factfinder at trial," therefore, "reasonable law officers need not resolve every doubt about a suspect's guilt before probable cause is established." Id. at 660, 696 S.E.2d at 243 (internal quotation marks omitted).

Given the evidence in this case, the trial court had ample reason to find probable cause existed to arrest Tizon. Officer Coulter arrived on the scene of a reported shooting. He found what appeared to be a dead body with gunshot wounds, discovered the handgun dropped by Tizon, and learned from Tizon's neighbor that Tizon had moments before admitted shooting her boyfriend. Tizon claims the officer lacked any "information regarding any malicious intent,

motive, or pre-meditation" sufficient to justify an arrest for murder. Appellant's Br. at 23-24. We disagree with the legal assumption underlying this argument.

Under settled principles, the "absence of probable cause to believe a suspect committed the *particular crime* for which he was arrested does not necessarily invalidate the arrest if the officer possessed sufficient objective information to support an arrest on a *different charge.*" Slayton, 41 Va. App. at 109, 582 S.E.2d at 452 (emphasis added); see also McGuire v. Commonwealth, 31 Va. App. 584, 596-97, 525 S.E.2d 43, 49 (2000); Golden v. Commonwealth, 30 Va. App. 618, 625, 519 S.E.2d 378, 381 (1999).

The quantum of probable cause justifying Tizon's arrest, therefore, need not be specific to a first-degree murder charge (requiring premeditation), or a second-degree murder charge (requiring malice), or, for that matter, any murder charge. Probable cause to believe she had committed any arrestable offense suffices.[7] That said, we do not suggest the facts did *not* constitute probable cause for murder. Our point is simply that it does not matter. The facts known to the arresting officer established probable cause for voluntary or involuntary manslaughter, discharging a firearm in a dwelling, malicious or unlawful wounding, or any number of other arrestable offenses. We thus reject Tizon's challenge to the trial court's denial of her suppression motion on probable cause grounds.

(ii) *Violation of Miranda Rights*

In her pretrial motion to suppress, Tizon also argued the officers violated her rights under Miranda v. Arizona, 384 U.S. 436 (1966), by questioning her at the scene of the crime without

---

[7] See generally 1 Wayne R. LaFave, Search & Seizure § 1.4(d), at 119-21 (4th ed. 2004 & Supp. 2011-12); 2 Wayne R. LaFave, Criminal Procedure § 3.1(d), at 25-26, § 3.5(a), at 205-06 (3d ed. 2007); 1 Charles Alan Wright, Federal Practice & Procedure § 58, at 135-36 (4th ed. 2008); Ronald J. Bacigal, Criminal Procedure § 2:2, at 8 n.8 (2011-12).

first warning her of her rights, then by obtaining a statement in the police cruiser after her arrest, and later by "interrogating" her in the bathroom at the police station after she had invoked her right to counsel. See Appellant's Br. at 24-28. Like the trial court, we find none of these assertions persuasive.

As the United States Supreme Court recently reaffirmed, under "Miranda case law, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." Howes v. Fields, 132 S. Ct. 1181, 1189 (2012). That degree of coercive danger does not exist "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect" as the perpetrator of the crime. Id. at 1188 (summarizing in parenthetical the holding of Oregon v. Mathiason, 429 U.S. 492, 494 (1977) (*per curiam*)). All the more, it is not dispositive merely that the person questioned is not free to leave:

> Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of Miranda. We have decline[d] to accord talismanic power to the freedom-of-movement inquiry, and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda. Our cases make clear . . . that the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody.

Howes, 132 S. Ct. at 1189-90 (citations and internal quotation marks omitted).

Instead, Miranda warnings are required only when an officer interrogates a suspect subject to "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Brooks v. Commonwealth, 282 Va. 90, 96, 712 S.E.2d 464, 467 (2011) (citation omitted). Consequently, Miranda "does not apply to a temporary investigatory detention" short of "a *de facto* arrest." Testa v. Commonwealth, 55 Va. App. 275, 283 n.5, 685 S.E.2d 213, 217

n.5 (2009) (citation omitted). "Fidelity to the doctrine announced in <u>Miranda</u> requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." <u>Howes</u>, 132 S. Ct. at 1192 (quoting <u>Maryland v. Shatzer</u>, 130 S. Ct. 1213, 1224 (2010)). "Voluntary confessions," after all, "are not merely a proper element in law enforcement, they are an unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law." <u>Id.</u> (quoting <u>Shatzer</u>, 130 S. Ct. at 1222).

Applying these principles, we conclude Tizon's scene-of-the-crime argument fails because her incriminating statements preceded any custodial arrest or any degree of detention approximating a custodial arrest. As the trial court found, the investigating officer merely arrived on the scene of a reported shooting and did what any trained officer would: ask questions of anyone who might know something about it. He did not tell Tizon she was not free to leave, place her in any physical restraints, remove her from her neighbor's condo, engage her in a series of prolonged accusatory questions, or threaten her with any show of force. Until Tizon was formally arrested, she was under no custodial restraint of any nature. We thus reject Tizon's argument that the trial court should have suppressed the incriminating statements she made prior to her formal arrest.[8]

Even so, Tizon continues, the statement she made following her arrest while being transported by the officer to the police station should have been suppressed. We disagree. Tizon did not make the statement in response to any interrogation. She volunteered it. "Even when otherwise applicable, <u>Miranda</u> bars from evidence only a suspect's responses to police *interrogation* and has no impact on a suspect's volunteered statements." <u>Testa</u>, 55 Va. App. at

---

[8] It is inconsequential that the officer suspected Tizon to be the shooter. A police officer's "subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of <u>Miranda</u>." <u>Aldridge v. Commonwealth</u>, 44 Va. App. 618, 646, 606 S.E.2d 539, 553 (2004) (quoting <u>Stansbury v. California</u>, 511 U.S. 318, 324 (1994)).

283, 685 S.E.2d at 217 (footnote omitted). "'Volunteered statements of any kind are not barred by the Fifth Amendment,' Miranda explained, 'and their admissibility is not affected by our holding today.'" Id. (quoting Miranda, 384 U.S. at 478).

Finally, Tizon claims she specifically invoked her right to counsel at the police station and was thereafter subjected to a custodial interrogation while using the bathroom. This assertion fails on several grounds. Most prominent among them, however, is that her statements while in the bathroom were never admitted at trial — a conspicuous circumstance not mentioned in Tizon's brief on appeal. Because the challenged evidence had no effect on the trial, we decline to offer an opinion on this moot issue. See Yeatts v. Commonwealth, 242 Va. 121, 132, 410 S.E.2d 254, 261 (1991) (observing "the Commonwealth never offered any of the [objected-to] articles into evidence, so the point is moot").

### D. JURY INSTRUCTIONS ON INFERRING INTENT

Over Tizon's objection, the trial court instructed the jurors that they "may infer that every person intends the natural and probable consequences of his acts" and they "may, but are not required to, infer malice from the deliberate use of a deadly weapon unless, from all the evidence, [they] have a reasonable doubt as to whether malice existed." Va. Model Jury Instructions: Criminal Nos. 2.600 & 33.240 (2011). Tizon argues these instructions misstated the law and unconstitutionally shifted to her the burden of proving her innocence.

The Virginia Supreme Court has already addressed the "arguments with regard to the constitutionality of instructing the jury" on the "deliberate use of a deadly weapon," Thomas v. Commonwealth, 279 Va. 131, 160-61, 688 S.E.2d 220, 236-37 (2010), and has repeatedly rejected the assertion that the "natural and probable consequences of his acts" instruction

- 16 -

unconstitutionally "shifts the burden of proof," id. at 166, 688 S.E.2d at 239.[9]  The trial court, therefore, did not err by giving these jury instructions.

III.

Finding no error in the trial court's decisions or the jury's guilty verdicts, we affirm Tizon's convictions for second-degree murder and for use of a firearm during the commission of that murder.

Affirmed.

---

[9] For over a century, the Virginia Supreme Court has held these "two instructions correctly expound the law."  Murphy v. Commonwealth, 64 Va. (23 Gratt.) 960, 972 (1873); see, e.g., Morva v. Commonwealth, 278 Va. 329, 342-43, 683 S.E.2d 553, 560-61 (2009) (intended consequences); Schmitt v. Commonwealth, 262 Va. 127, 145, 547 S.E.2d 186, 198-99 (2001) (intended consequences); Strickler v. Commonwealth, 241 Va. 482, 495-96, 404 S.E.2d 227, 235-36 (1991) (deadly weapon); Smith v. Commonwealth, 239 Va. 243, 263-64, 389 S.E.2d 871, 882 (1990) (deadly weapon); Warlitner v. Commonwealth, 217 Va. 348, 350-51, 228 S.E.2d 698, 699-700 (1976) (deadly weapon); Henry v. Commonwealth, 195 Va. 281, 289, 77 S.E.2d 863, 868 (1953) (deadly weapon); Mercer v. Commonwealth, 150 Va. 588, 592-95, 142 S.E. 369, 370-71 (1928) (intended consequences and deadly weapon); Muscoe v. Commonwealth, 87 Va. 460, 464, 12 S.E. 790, 791-92 (1891) (deadly weapon).