UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Kelsey and Alston
Argued by teleconference

KENNETH GATLING

MEMORANDUM OPINION[*] BY
v.      Record No. 0437-13-1                    JUDGE D. ARTHUR KELSEY
                                                        MARCH 4, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James C. Hawks, Judge

(Kurt A. Gilchrist, on brief), for appellant.  Appellant
submitting on brief.

Craig W. Stallard, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


In the trial court, Kenneth Gatling entered a conditional plea of guilty to possessing

heroin with the intent to distribute, in violation of Code § 18.2-248.  On appeal, he contends the

court erred by not suppressing his confessions.  Finding no such error, we affirm.


I.

When reviewing a denial of a suppression motion, we review the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."  Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (internal

quotation marks omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  This standard requires us

to "give due weight to inferences drawn from those facts by resident judges and local law

enforcement officers."  Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008)

(internal quotation marks omitted).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In this case, after a detective had conducted undercover surveillance of Gatling for three or four days in September 2012, he came to suspect Gatling of selling drugs from the front porch of his sister's home. Wanting to verify Gatling's identity, three plain-clothes police detectives walked up to him as he sat on the front porch of his sister's home on September 11, 2012. They were displaying their badges and identified themselves as police detectives. They asked Gatling if he had an identification card on him.

Without being requested to do so, Gatling invited the detectives into his sister's home and told them that they could retrieve his identification card from his wallet, which was in the back pocket of a pair of jeans he identified as his own. After verifying Gatling's identity, one of the detectives stated that he believed Gatling was selling heroin from his sister's home. Without equivocation, Gatling replied, "yeah, you are right." App. at 8.

The detectives then requested and received permission from Gatling's sister to search her home. During the search, they discovered under a couch pillow a yellow, plastic Easter egg containing forty-nine capsules of heroin. The detectives then arrested Gatling and twice advised him of his Miranda rights. Waiving his right to remain silent, Gatling volunteered a full confession, describing how many heroin capsules he typically sold and for how much.

At no time prior to Gatling's arrest did any of the detectives state that he was not free to leave. Nor did they demand to enter the home or, for that matter, suggest that they would not leave if asked. Prior to Gatling's arrest, the detectives did not restrain Gatling, physically touch him, or issue any commands.[1] Gatling appeared to be "very cooperative" and "very apologetic" throughout his encounter with the detectives. Id. at 22.

---

[1] At some point while the detectives were in the home, one of them unholstered his firearm because he heard a suspicious noise coming from one of the bathrooms. It turned out to be two children who posed no threat. Though unsure of the exact timing, the detective thought this event occurred after he had told Gatling that he suspected him of selling drugs. Id. at 22-23.

In the trial court, Gatling argued that the detectives questioned him about their suspicion of heroin distribution prior to providing Miranda warnings and, thus, his initial confession should have been suppressed. The post-Miranda statement, Gatling added, should have been suppressed as "fruit of the poisonous tree." Appellant's Br. at 5. The trial court disagreed and denied Gatling's motion to suppress. The court thereafter accepted his conditional guilty plea and convicted him of possessing heroin with the intent to distribute, in violation of Code § 18.2-248.

II.

On appeal, Gatling contends his pre-Miranda confession occurred after he "was seized by detectives." Appellant's Br. at 4. The seizure occurred, he argues, at the moment during his consensual conversation with the detectives when one said that he was suspected of selling drugs, "a statement intended to illicit [sic] a response." Id. Citing McGee v. Commonwealth, 25 Va. App. 193, 487 S.E.2d 259 (1997), Gatling argues that a Fourth Amendment seizure takes place whenever police "confront a person and inform him that he is a suspect in a crime." Appellant's Br. at 5. Because he was seized at that moment, he concludes, the detectives were not permitted to continue talking with him without first reading his Miranda rights.

We are skeptical of Gatling's first premise — that, under McGee, the detective's mere mention that Gatling was suspected of criminality constituted a Fourth Amendment seizure.[2] We

No evidence suggested, nor did Gatling contend, that the detective ever pointed his firearm at him or waved it in his presence.

[2] McGee stated that a specifically directed accusation of criminality is "significant among the 'totality of the circumstances' to determine whether a reasonable person would feel free to leave." McGee, 25 Va. App. at 200, 487 S.E.2d at 262 (footnote omitted). McGee did not say it was legally dispositive, thus rendering irrelevant all of the other facts embedded in the totality of the circumstances. See Davis v. Commonwealth, 37 Va. App. 421, 431-32, 559 S.E.2d 374, 379 (2002) (explaining that "an allegation of criminal wrongdoing does not automatically negate a finding of a consensual encounter"); Barkley v. Commonwealth, 39 Va. App. 682, 692, 576 S.E.2d 234, 242 (2003) (clarifying further that, even under McGee, "merely informing" a suspect that officers are "conducting a general investigation in response to a report of drug dealing" does not implicate a seizure (internal quotation marks omitted)).

need not decide the issue, however, because even if the assertion were true it would not support the suppression remedy Gatling seeks.

Under "Miranda case law, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." Howes v. Fields, 132 S. Ct. 1181, 1189 (2012). "Miranda does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." Roberts v. United States, 445 U.S. 552, 560 (1980)). "That degree of coercive danger does not exist 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect' as the perpetrator of the crime." Tizon v. Commonwealth, 60 Va. App. 1, 18-19, 723 S.E.2d 260, 268 (2012) (quoting Howes, 132 S. Ct. at 1188 (summarizing in parenthetical the holding of Oregon v. Mathiason, 429 U.S. 492, 494 (1977) (*per curiam*))). All the more, it is not dispositive merely that the person questioned is not free to leave:

> Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of Miranda. We have decline[d] to accord talismanic power to the freedom-of-movement inquiry, and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda. Our cases make clear . . . that the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody.

Id. at 19, 723 S.E.2d at 268-69 (alterations in original) (quoting Howes, 132 S. Ct. at 1189-90 (citations and internal quotation marks omitted)).

Instead, Miranda requires warnings only when a police officer interrogates a suspect who is subject to "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Brooks v. Commonwealth, 282 Va. 90, 96, 712 S.E.2d 464, 467 (2011) (internal quotation marks omitted). "Miranda 'does not apply to a temporary investigatory detention' short of 'a *de facto* arrest.'" Tizon, 60 Va. App. at 19, 723 S.E.2d at 269 (quoting Testa v.

Commonwealth, 55 Va. App. 275, 283 n.5, 685 S.E.2d 213, 217 n.5 (2009)). "'Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.'" Howes, 132 S. Ct. at 1192 (quoting Berkemer v. McCarty, 468 U.S. 420, 437 (1984)). "'Voluntary confessions,' after all, 'are not merely a proper element in law enforcement, [but] they are an unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law.'" Tizon, 60 Va. App. at 19, 723 S.E.2d at 269 (quoting Howes, 132 S. Ct. at 1192).

In this case, assuming *arguendo* that Gatling was seized at the moment the detective stated Gatling was a suspect, the circumstances fall far short of placing him in any coercive condition remotely like a custodial arrest. The detectives were in his sister's home at Gatling's invitation. They said nothing at the time about him being under arrest. Nor did they — at any relevant point during their encounter with Gatling — display their weapons, use any physical restraints, attempt to restrict his movements, or threaten him with commands.

One of detectives merely informed Gatling that he was suspected of selling heroin. Just as an accusation of criminality does not necessarily convert a consensual encounter into an investigatory detention, all the more it does not — by itself — convert an investigatory detention into the functional equivalent of a custodial arrest.[3] To be sure, if a custodial situation for

_____

[3] See Stansbury v. California, 511 U.S. 318, 325 (1994) ("Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue . . . ."); United States v. Jones, 523 F.3d 1235, 1241 (10th Cir. 2008) (stating that no single factor, including a clear statement by law enforcement that a person is a prime suspect, is dispositive in a custody analysis); United States v. Lebrun, 363 F.3d 715, 718 (8th Cir. 2004) (*en banc*) (holding that the appellant was not in custody when he offered his confession, even though investigators told him "he was the prime suspect . . . and that they had significant evidence" against him); United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (holding that the appellant's "status as a suspect, and the coercive environment that exists in virtually every interview by a police officer of a crime suspect, did not automatically create a custodial

Miranda purposes does not occur when officers question a suspect "'in the station house'" with the clear indication that he is the "'one whom the police suspect' as the perpetrator of the crime," Tizon, 60 Va. App. at 18, 723 S.E.2d at 268 (quoting Howes, 132 S. Ct. at 1188 (summarizing in parenthetical the holding of Mathiason, 429 U.S. at 494)), it does not occur when they merely question a suspect as invited guests in his sister's home.[4]

We similarly reject Gatling's challenge to the admissibility of his post-Miranda confession. Even if his challenge to his pre-Miranda confession were successful, that conclusion would not automatically mean his post-Miranda confession should likewise be suppressed. A post-Miranda confession is subject to suppression only if the "law enforcement officer employs a deliberate, two-step strategy to obtain a postwarning confession." Kuhne v. Commonwealth, 61 Va. App. 79, 92, 733 S.E.2d 667, 674 (2012) (applying Justice Kennedy's concurring opinion in Missouri v. Seibert, 542 U.S. 600, 620-22 (2004)). Gatling did not argue at trial, nor does he contend on appeal, that the detectives deliberately employed the question-first-warn-later strategy in a subtle effort to coerce him into making a post-Miranda confession. For this reason alone, the trial court correctly held that Gatling's post-Miranda confession could not be deemed constitutionally inadmissible at his trial.

---

situation" (internal quotation marks omitted)); United States v. Howard, 115 F.3d 1151, 1155 (4th Cir. 1997) (emphasizing that "even a clear statement by an officer that the person being questioned is a suspect does not alone determine custody, but is only one among many factors . . ." (internal quotation marks omitted)); United States v. Pratt, 645 F.2d 89, 90 (1st Cir. 1981) (noting that "increased official suspicion," even when a suspect is aware of the suspicion, "is not sufficient by itself to apply coercive pressures equivalent to custodial questioning").

[4] See generally Mathiason, 429 U.S. at 495-96 (holding that an interrogation conducted at a police station was not custodial even though the suspect was told, falsely, that his fingerprints had been found at the scene of a burglary). Cf. United States v. Salvo, 133 F.3d 934, 950 (4th Cir. 1998) (citing numerous federal court of appeals decisions supporting the proposition that "when police question a suspect in a residence, these circumstances often do not rise to the kind of custodial situation that necessitates Miranda warnings").

III.

Because the trial court did not err by denying Gatling's motion to suppress his confessions of guilt, we affirm his conviction based upon his conditional plea of guilty.

<u>Affirmed.</u>