UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Ortiz and Causey
Argued at Lexington, Virginia


ANTHONY LARON FITZGERALD

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0303-22-3                      JUDGE DANIEL E. ORTIZ
                                                    FEBRUARY 7, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

James C. Martin (Martin & Martin Law Firm, on brief), for
appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Pittsylvania County Circuit Court convicted Anthony Laron

Fitzgerald of malicious wounding and abduction and sentenced him to four years and six months'

incarceration.  Fitzgerald does not challenge his abduction conviction but argues on appeal that the

evidence was insufficient to support his conviction for malicious wounding.  Because the evidence

was sufficient to support his conviction for malicious wounding, we affirm.

BACKGROUND

Tiffany Paduano and Fitzgerald have two children together.  In January 2021, Paduano and

Fitzgerald "weren't seeing each other," but she sometimes stayed at his residence.  On the night of

January 28, 2021, Paduano, Fitzgerald, their children, and Fitzgerald's mother were at Fitzgerald's

residence.  Fitzgerald "consumed alcohol" and "an unknown drug," and he became irate, yelled, and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"wasn't making a whole lot of sense." Fitzgerald and Paduano got into a verbal altercation that became physical. While Paduano was standing near the island separating the kitchen and living room, Fitzgerald picked her up and threw her six to nine feet across the living room. Her forehead struck a "wooden platform" on the living room floor, and she began bleeding profusely. Paduano testified that she did not think that "it was [Fitzgerald's] intention to . . . harm [her] the way that [she] was harmed."

Paduano wiped the blood from her eyes and grabbed an aluminum baseball bat, intending to strike Fitzgerald because she "was scared." Before she could do so, Fitzgerald took the bat and struck her left leg near her thigh. After he hit her, she asked if she "could get medical attention." Paduano tried to leave the residence multiple times, but Fitzgerald did not allow her to leave. He stood between her and the door, told her not to leave, and physically moved her away from the door. He also took her cell phone. Fitzgerald detained Paduano for "several hours," into the morning of January 29, 2021. Her head was bleeding the entire time, and Fitzgerald's mother "kept giving [her] towels to soak up" the blood.

When Fitzgerald was not paying attention, Paduano found her car keys, ran from the residence, and drove to her friend's residence. Her friend, Vincent Facchini, answered the door, and Paduano fainted in his arms. Facchini stated that her head was "busted open" and there was "blood all in her hair." He drove Paduano to the fire station, and an ambulance took her from the station to the emergency room. She remained at the emergency room for several hours and received fourteen staples. According to hospital records, Paduano was "beat with a baseball bat" in her chest, abdomen, and legs.

Deputy McCullough interviewed Paduano at the emergency room. He stated that she suffered "severe head trauma" and was in "a great deal of pain." He identified several pictures that he took of Paduano at the hospital. The Commonwealth also played a portion of their interaction,

recorded by McCullough's body camera. Forensic nurse Kimberly Barnes examined Paduano on January 30, 2021. Barnes identified multiple photographs that she took of Paduano's injuries. In her report, Barnes stated that Paduano suffered a nine-centimeter laceration with fourteen staples on her forehead, fifteen bruises on her arms and legs, and abrasions to her back and knees.

After the Commonwealth rested, Fitzgerald moved to strike the evidence. He argued that the Commonwealth failed to prove malice and intent, as Paduano testified that she did not believe Fitzgerald intended to hurt her that badly. The Commonwealth argued that Paduano's testimony regarding Fitzgerald's intent was not dispositive and that Fitzgerald's actions, combined with Paduano's injuries, were sufficient to show malice and intent. The trial court denied the motion to strike and convicted Fitzgerald. Fitzgerald appeals his conviction for malicious wounding.

## STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

ANALYSIS

Although Fitzgerald contends that the evidence was insufficient to prove that he acted with malice and with the intent to maim, disfigure, disable, or kill,[1] the totality of the evidence, reviewed together, demonstrates that Fitzgerald acted with the requisite malice and intent and supports Fitzgerald's conviction for malicious wounding.

"A defendant violates Code § 18.2-51 when he wounds or injures a victim 'with the intent to maim, disfigure, disable, or kill' [her]. If the defendant acts with malice, he is guilty of malicious wounding." *Williams v. Commonwealth*, 64 Va. App. 240, 248 (2015). Malice occurs when a defendant commits "a wrongful act intentionally, or without just cause or excuse, or as a result of ill will," *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012), and may be "express or implied by conduct," *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019). Whether a defendant "acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019). "Malice may be inferred from the deliberate use of a deadly weapon." *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000). A deadly weapon is "one which is likely to produce death or great bodily injury from the manner in which it is used." *Justiss v. Commonwealth*, 61 Va. App. 261, 274 (2012). Whether a weapon is deadly "often depends more on the manner in which it has been used than on its intrinsic character." *Id.* This determination belongs to the fact-finder. *Id.*

---

[1] The Commonwealth argues that we should dismiss Fitzgerald's appeal because his assignment of error "does not address any findings or rulings of the trial court," as required by Rule 5A:20(c). Although Fitzgerald's assignment of error is perhaps inartfully worded, we nevertheless conclude that the assignment of error "adequately puts the [C]ourt and opposing counsel on notice as to 'what points [Fitzgerald]'s counsel intends to ask a reversal of the judgment or decree' and prevents them from having to 'hunt through the record for every conceivable error which the court below may have committed.'" *Findlay v. Commonwealth*, 287 Va. 111, 116 (2014).

- 4 -

"To be guilty of malicious wounding, a person must also intend to permanently, not merely temporarily, harm another person." *Perkins*, 295 Va. at 330. "Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Id.* The fact-finder may infer that "every person intends the natural, probable consequences of his . . . actions." *Id.* To determine whether the evidence was sufficient to prove intent, a court should consider both "the method by which a victim is wounded" and "the circumstances under which that injury was inflicted." *Id.*

Viewed in the light most favorable to the Commonwealth—as we must on appeal—the evidence supports the circuit court's finding that Fitzgerald acted with the requisite malice and intent for the crime of malicious wounding. Although Fitzgerald asserts that the incident was only "[a] single pushing or throwing" "combined with a single hit with an aluminum softball bat," the evidence belies this characterization. To the contrary, the evidence showed that Fitzgerald became irate, yelled at Paduano, and threw her across the room, where she gashed her forehead on a wooden platform, causing blood to flow into her eyes. Fitzgerald then struck Paduano with an aluminum bat.

Although Paduano testified only about one hit to her left thigh, she told the treating medical providers at the hospital that Fitzgerald beat her chest, abdomen, and legs with the bat. Moreover, the photographs taken by Deputy McCullough at the hospital and Nurse Barnes during the forensic examination show that Paduano's body was covered with bruises and abrasions, consistent with her account at the hospital. Accordingly, a rational fact-finder could conclude that after Paduano suffered a serious head wound, Fitzgerald struck her with an aluminum baseball bat and then hit her repeatedly, all over her body. A rational fact-finder could similarly find that the aluminum bat was a deadly weapon, based on Fitzgerald's use of the bat. *Justiss*, 61 Va. App. at 274. Fitzgerald's actions—repeatedly striking Paduano with a deadly

weapon after she suffered a serious head wound—are sufficient to prove both malice and intent to permanently injure.

Regarding malice, Fitzgerald does not contest that his actions were deliberate, nor does he argue that they were justified. *See Tizon*, 60 Va. App. at 11. His anger throughout the assault is additional evidence of implied malice, as are the facts that he prevented Paduano from leaving and ignored her pleas for medical care until she escaped "several hours" later. *See Miller v. Commonwealth*, 5 Va. App. 22, 25 (1987) ("If all of the evidence demonstrates that the accused reflected or deliberated, that his passion cooled, or that there was reasonable time or opportunity for cooling, then the wounding is attributable to malice and not heat of passion."); *see also Thomas v. Commonwealth*, 186 Va. 131, 139 (1947) ("Malice . . . is intended to denote an action flowing from any wicked and corrupt motive . . . where the fact has been *attended with such circumstances as carry in them the plain indications of a heart regardless of social duty*." (emphasis added)).

Regarding intent, a rational fact-finder could find that a defendant who struck an already-injured victim multiple times with an aluminum bat and deliberately thwarted her ability to receive medical care intended to cause permanent harm. *See Perkins*, 295 Va. at 330 ("Intent can . . . be inferred from the act itself."). Although Fitzgerald asserts that such intent "cannot ordinarily be presumed from a blow with a fist," a single blow with a fist is readily distinguishable from multiple blows with an aluminum bat. And Fitzgerald does not challenge that serious, permanent injuries are the natural and probable consequences of such blows.

Finally, intent is often established by circumstantial evidence. *See Perkins*, 295 Va. at 330. Here, there was ample circumstantial evidence by which a rational trier of fact could find the requisite intent. Although Fitzgerald argues that Paduano's testimony—specifically, that she did not believe Fitzgerald intended to hurt her as badly as he did—prevents a finding of malice

- 6 -

and intent to permanently injure, the trial court, as fact-finder, had the sole discretion to weigh Paduano's testimony and was free to accept certain aspects of her testimony and reject others. *Dalton v. Commonwealth*, 64 Va. App. 512, 525-26 (2015); *Creamer v. Commonwealth*, 64 Va. App. 185, 204 (2015). However, even if the fact-finder gave weight to the testimony that Fitzgerald recites, that testimony referred to the head injury that Paduano suffered after Fitzgerald threw her, not to the injuries that Fitzgerald inflicted with the aluminum bat. Accordingly, the trial court's finding that Fitzgerald acted with malice and intent to permanently injure Paduano is supported by the evidence.

## CONCLUSION

For the foregoing reasons, we affirm Fitzgerald's conviction for malicious wounding.

*Affirmed.*