COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:  Chief Judge Huff, Judges Petty and Beales
Argued at Richmond, Virginia


TYRONE LOGAN, S/K/A
 TYRONE LAMONT LOGAN
                                                                OPINION BY
v.      Record No. 0867-16-2                        JUDGE RANDOLPH A. BEALES
                                                                JUNE 20, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Thomas V. Warren, Judge Designate

Craig S. Cooley for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a bench trial on December 29, 2015, the trial court convicted Tyrone Lamont

Logan ("appellant") of one count of attempted murder of Joshua Bryant in violation of

Code §§ 18.2-32 and 18.2-26, one count of shooting at an occupied vehicle in violation of Code

§ 18.2-154, and one count of use of a firearm in the commission of a felony in violation of Code

§ 18.2-53.1.[1]  On appeal, appellant argues that the trial court erred in finding the evidence

sufficient to prove that appellant was the shooter and in finding the evidence sufficient to prove

that the shooter acted with malice.  Appellant also contends that the trial court erred at the

sentencing hearing when it refused to allow appellant to call certain witnesses at sentencing and

by refusing to allow appellant to proffer the witnesses' testimony for the record on appeal.

---

[1] Appellant was also originally convicted of a second count of attempted murder of Mark
Crocker in violation of Code §§ 18.2-32 and 18.2-26, but the trial court dismissed the charge
upon appellant's motion to set aside the verdict.

## I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

So viewed, the evidence showed that a social gathering took place on Christmas Eve 2014 at a house located just off a public road in Chesterfield County. Ryan Gooden ("Gooden"), appellant's stepson, was living in the house with his grandmother, his aunt, and the aunt's boyfriend. Gooden testified that there was drinking at the party and that he and appellant had taken "a shot together" that evening.

When Joshua Bryant ("Bryant" or "the victim") arrived in his pickup truck at approximately 5:00 p.m., a man named Mark Crocker ("Crocker") climbed into the passenger seat. Bryant, who was confined to a wheelchair, remained in the truck and conversed with Crocker. Behind Bryant's seat was a wheelchair, a shotgun, and a "muzzleloader" firearm. The record indicates that Bryant and appellant were the only individuals who had firearms, and Bryant unequivocally testified that he never removed either of his firearms from behind his seat or even talked about their presence.

Several people gathered around Bryant's truck, including appellant. Appellant turned to Gooden and asked, "Is he [Bryant] all right with you?" Gooden answered that he was, and noted their family connection.

Bryant testified that appellant and Gooden walked to the back of Bryant's truck and continued to talk, raising their voices on occasion. Appellant repeatedly asked Gooden if Bryant was "all right" with Gooden. Watching the pair from his rearview mirror, Bryant saw appellant remove a pistol from beneath his shirt. Gooden and Giles also each testified that they observed

appellant holding a firearm out. Gooden also testified that they were "[s]tanding there talking. And next thing you know, I'm standing there, and I seen a gun." Donnie Giles testified that he came out of his house and observed the men speaking loudly. Giles also testified that he "heard Ryan telling Tyrone [appellant] that everything was okay and won't no problems out there or nothing like that. And then after that, I really ain't -- I think then I just remembered him having a gun after that."

Appellant then walked up to the driver's side of the truck, opened the door, and pointed the gun at Bryant. Bryant testified that appellant said, "Don't nobody move." Giles testified that appellant had said, "It's about to get real out here. Don't nobody move." Giles also testified that he observed appellant "holding [the gun] in one hand and opening the door of the truck with the other hand. Then after that, Ryan took off running." Giles testified that appellant followed Ryan, and "all of us got out of there after that." Appellant ran after Gooden and asked, "Where are you going?" Gooden shut the door behind him, but appellant kicked the door open. Bryant testified that he did not see anything after appellant kicked the door in because he decided he needed to leave. Glenda Jenkins, Gooden's aunt, testified that she saw appellant "coming in the door" as she was sitting on the floor opening gifts.

Bryant immediately started his truck, backed it up to turn around, and drove out of the driveway as "fast as he could." Mark Crocker was still in the passenger's seat of the truck. Bryant had traveled approximately ten yards down the road when he heard gunfire. Four or five shots rang out, one of which pierced the glass behind the truck cab and lodged in the passenger visor in front of Crocker. No one observed who was shooting at the vehicle at the time the bullets were being fired. Bryant testified that he had only driven down the road about thirty feet from the driveway when he started hearing the shots. The trial court asked Bryant, "So whoever fired the shots ran out into the road?" to which Bryant responded, "Yes." Another bullet struck

the rear bumper of the truck. When Officer Alan Rowlett arrived at the house to investigate the shooting, he observed that the rear window of the Ford truck had been shattered. The police recovered four cartridge casings that all matched the same firearm. One cartridge was found in the driveway of the home, and the other three cartridges were close by – on the road just past the front yard line.

## II. STANDARD OF REVIEW

When considering the sufficiency of the evidence presented below, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

## III. ANALYSIS

### A. *Appellant was the Criminal Agent Who Discharged a Firearm*

Appellant argues that the Commonwealth failed to prove *who* shot at the victim. "[I]n a circumstantial evidence case, such as the case currently before us, the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence

- 4 -

beyond a reasonable doubt . . . ." Ervin v. Commonwealth, 57 Va. App. 495, 505, 704 S.E.2d 135, 140 (2011) (*en banc*). The factfinder was allowed "to draw reasonable inferences from" the facts in this case to conclude that appellant was the shooter. Jackson, 443 U.S. at 319. It is beyond dispute that someone shot at the victim's truck from the vicinity of Gooden's place of residence because a bullet was found lodged in the passenger-side front windshield window visor, the back windshield glass was broken, and bullet casings were found at the edge of the driveway and just in the road. The record shows no indication that anyone but appellant and Bryant had firearms at the location of the shooting, and there was no evidence to suggest Bryant's firearms were removed from behind his seat in his truck. Appellant was the only individual seen handling a firearm, appellant was seen with the firearm shortly before the shooter fired at the truck, and appellant was the only one who threatened Bryant and pointed his gun at Bryant.

Appellant relies on Commonwealth v. Smith, 259 Va. 780, 529 S.E.2d 78 (2000), and on an unpublished case from this Court, Hines v. Commonwealth, No. 0514-12-2, 2013 Va. App. LEXIS 1 (Va. Ct. App. Jan. 8, 2013), to argue that the Commonwealth failed to prove beyond a reasonable doubt that appellant was the individual who shot at the occupied truck in this case. Both cases are highly distinguishable from the instant case.

In Smith, the victim remembered being hit with a fist, but he did not remember being stabbed, he did not recall seeing appellant with a knife, and only remembered walking *away* from appellant before losing consciousness. In Hines, the victim remembered getting into an argument with her boyfriend one evening and that he threw a bottle at the wall near her, but her next memory was of speaking to police in the early hours of the next morning. The police had found her – with serious injuries to her face – in a hotel lobby (although she recalled last being in her hotel room).

Thus, both cases involve situations in which the *only* evidence pointing to the defendant's culpability was that the defendant was an earlier aggressor, but that some unknown amount of time passed between the time of initial aggression and when the victim became aware of his or her injury. Moreover, another important distinction is that the victims in both cases had no clear recollection of what happened to them. They were intoxicated and lost consciousness for a stretch of time. In the present case, the victim observed appellant threatening him by pointing a gun directly at him very close in time to when the victim's vehicle was shot as he fled in it. Appellant was heard by multiple witnesses to be threatening the victim, and appellant expressed anger toward the victim.[2] Here, unlike in Smith and Hines, the victim was conscious throughout the course of this continuous encounter. A rational factfinder certainly could have concluded that appellant pulled a gun on the victim, that appellant became distracted from the victim when Gooden attempted to run away, and that appellant followed Gooden to the house, calling, "Where are you going?" A rational factfinder could also reasonably infer that the victim's attempt to drive away drew appellant's renewed attention – and that appellant was able to leave the house and run through the yard, firing his weapon at the victim and hitting his truck.

As nothing in the record indicates that any other individuals (besides appellant and the fleeing victim) had firearms, no one else had threatened Bryant, and no one else was observed to bear any ill will toward Bryant, the factfinder in this case could have concluded that appellant was the shooter.

### B. *Appellant Shot into the Vehicle with Malice*

Appellant argues, "Aside from failing to establish that defendant Logan was the criminal agent, the evidence failed to establish the shooter (whoever that was) discharged the firearm with

---

[2] While appellant seemingly disputes this fact, the trial court rejected appellant's characterization of events and said, "I don't accept the proposition that there was no 'beef' between the defendant and the driver [Bryant]."

- 6 -

malice. . . . The evidence must exclude the potentials of accident and/or recklessness or that the shooter unlawfully (rather than maliciously) fired at the vehicle - for example to damage the vehicle."

Whether an accused acted with malice "is generally a question of fact and may be proved by circumstantial evidence." Knight v. Commonwealth, 61 Va. App. 148, 156, 733 S.E.2d 701, 705 (2012) (quoting Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997)). "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" Tizon v. Commonwealth, 60 Va. App. 1, 11, 723 S.E.2d 260, 265 (2012) (quoting Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947)). Viewing the evidence in the light most favorable to the Commonwealth, the trial court's determination that appellant acted with malice is not plainly wrong or without evidence to support it. Malice "may be inferred 'from the deliberate use of a deadly weapon unless, from all the evidence,' there is a reasonable doubt as to whether malice existed." Williams v. Commonwealth, 64 Va. App. 240, 249, 767 S.E.2d 252, 257 (2015) (quoting Avent v. Commonwealth, 279 Va. 175, 201-02, 688 S.E.2d 244, 259 (2010)). The record is replete with facts supporting the trial court's determination – appellant threatened the victim, appellant pointed a firearm at the victim, and appellant then shot at the truck four times, narrowly missing the passenger's head. Based on this evidence, we hold that a rational factfinder could find that appellant shot at the victim with malice.

C. *The Trial Court Erred When it Precluded Appellant from Proffering Anticipated Witness Testimony*

"[N]ecessarily great latitude must be allowed to trial courts in the matter of examining witnesses . . . ." Nelson v. Commonwealth, 153 Va. 909, 919, 150 S.E. 407, 410 (1929) (quoting Murphy's Hotel v. Cuddy's Admr, 124 Va. 207, 97 S.E. 794, 798 (1919)). Appellant argues that here, however, the trial court abused its considerable discretion when it limited the number of

appellant's witnesses at the sentencing hearing and would not allow appellant the opportunity to proffer what their testimony would have been. The court had the following exchange with appellant's attorney:

> THE COURT: One more witness, Mr. Cooley.
> MR. COOLEY: Well, is that a question or a direction?
> THE COURT: Five witnesses at the sentencing on these circumstances is enough, unless something extraordinary comes up that I haven't heard about in this man's life.
> MR. COOLEY: Judge, I'll just tell you, these folks have come back several times, as you know it was continued the last time, and they wanted the Court to hear what they had to say.
> THE COURT: Well, they're not parties to the suit, nobody is entitled to come to a hearing and say what they want to say in unlimited numbers.

When appellant's last witness had then finished testifying, Mr. Cooley asked the trial court to allow him to proffer testimony from the other witnesses (who had not testified) at the conclusion of the hearing after the judge had left in order to preserve their testimony for the record so that he could appeal the trial court's ruling. The following exchange occurred:

> MR. COOLEY: Judge, again, I would, after the Court leaves, I would like the opportunity to just call one after another to say what they have to say so that it's on the record, because that's the only way I can preserve the record.
> THE COURT: Enough is enough.
> MR. COOLEY: You're declining to let me proffer?
> THE COURT: I'm declining any more witnesses to testify in the courtroom.
> MR. COOLEY: I'm not asking them to testify at the sentencing hearing, I'm asking that I be allowed to call them after the Court leaves and to proffer what their testimonies would have been as the Supreme Court says, that's the only way I can preserve the issue.
> THE COURT: I'm not going to allow you to do that.
> MR. COOLEY: Then note my exception.

We find that the trial court erred when it denied appellant the opportunity even to present a proffer of evidence.

> "[M]any trial issues are resolved with proffered evidence, . . . [and] counsel *and the trial court* must ensure [that such] proffers contain all of the information necessary" to achieve two purposes: to allow

the trial court a fair opportunity "to resolve the issue at trial" and "to provide a sufficient record for . . . review [on appeal]."

Creamer v. Commonwealth, 64 Va. App. 185, 195, 767 S.E.2d 226, 230 (2015) (quoting Albert v. Albert, 38 Va. App. 284, 290 n.1, 563 S.E.2d 389, 392 n.1 (2002)) (alterations in original) (italics added).  In this case, the trial court erred when it failed to allow appellant the opportunity to proffer his evidence so that this Court could engage in appellate review of the trial court's decision to exclude the testimony of some of appellant's sentencing witnesses.[3]  In Brown v. Commonwealth, 246 Va. 460, 437 S.E.2d 563 (1993), the Supreme Court stated, "[E]ven though Brown sought to make a proffer in the manner required by our precedent, he was denied the opportunity to do so.  Therefore, we must reverse the judgment of the trial court because, without a proffer, we are unable to ascertain whether the questions that Brown sought to ask Sydow [a witness] would have been proper."  Id. at 465, 437 S.E.2d at 565.  The trial court has the authority to limit cumulative evidence, but we have no way of knowing now on appeal whether the refused testimony was cumulative.

The Commonwealth argues that even if the trial court erred, such error should be harmless.  However, because there is no way – without knowing what evidence appellant would have proffered – to determine whether the trial court erred in denying appellant's request to present additional witnesses, we cannot say that such error in denying appellant's proffer was harmless.  See id. (finding that the trial court's preclusion of appellant's proffer was not harmless error).  Therefore, we must reverse the trial court's sentencing order, and we remand only for new sentencing proceedings consistent with this opinion as the excluded testimony at the sentencing hearing could have affected only appellant's sentencing – not his convictions.

---

[3] The Court's opinion today should not be read to preclude the trial court from exercising its considerable discretion in limiting appellant's number of witnesses at sentencing.  That is certainly a matter committed to the trial court's discretion and reviewable upon an abuse of discretion standard on appeal.

IV. CONCLUSION

In summary, this Court holds that the evidence was sufficient for a rational factfinder to conclude that appellant was the shooter and that appellant shot at Bryant's truck with malice. Consequently, we affirm appellant's convictions for attempted murder of Joshua Bryant in violation of Code §§ 18.2-32 and 18.2-26, for shooting at an occupied vehicle in violation of Code § 18.2-154, and for use of a firearm in the commission of a felony in violation of Code § 18.2-53.1. However, because we conclude that it was reversible error for the trial court to prevent appellant from even proffering the testimony of his proposed additional sentencing witnesses, we must reverse the trial court on this issue and remand the matter for new sentencing proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for resentencing.