# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


YASIR MALIK SMITH

                                                MEMORANDUM OPINION* BY
v.        Record No. 0604-21-1                  JUDGE ROBERT J. HUMPHREYS
                                                AUGUST 16, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Robert H. Sandwich, Jr., Judge

Sean E. Harris, Senior Trial Attorney (Office of Public Defender, on
brief), for appellant.

Victoria Johnson, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, Yasir Malik Smith was convicted of three counts of maliciously

shooting at an occupied vehicle, in violation of Code § 18.2-154, two counts of attempted

murder, in violation of Code §§ 18.2-26, 18.2-30, and 18.2-32, two counts of use of a firearm in

the commission of a felony, in violation of Code § 18.2-53.1, one count of reckless handling of a

firearm, in violation of Code § 18.2-56.1, one count of possession of a firearm by a convicted

felon, in violation of Code § 18.2-308.2, one count of destruction of property, in violation of

Code § 18.2-137(B)(ii), one count of entering a vehicle with the intent to commit mischief, in

violation of Code § 18.2-147, and three counts of discharging a firearm in public, in violation of

Code § 18.2-280.  Smith broadly appeals on the grounds that the evidence was legally

insufficient to convict him.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"As required by the established principles of appellate review, we will recite the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party in the [trial] court, and we will accord the Commonwealth the benefit of all inferences fairly deducible from that evidence." *White v. Commonwealth*, 267 Va. 96, 99 (2004) (alteration in original) (quoting *Stephens v. Commonwealth*, 263 Va. 58, 59-60 (2002)).

In the early morning hours of December 8, 2018, Billy and Edwina Scott, husband and wife, returned to their home after spending an evening out. Both spouses were sober; neither had recently consumed any alcohol or other substances. The Scotts were riding together in their truck, which Billy was driving. The couple had left their other vehicle, a Buick sedan, in the home's driveway. As the Scotts drove up to their residence, Edwina told Billy that it looked like a person was inside their parked Buick because she saw feet hanging out of the driver's-side door. Billy pulled his truck into the driveway, behind the Buick, illuminating the car's passenger compartment with the truck's headlights. Billy revved his truck's engine. When nothing happened, Billy reversed his truck and pulled into the front yard so that the truck was perpendicular to the Buick. Billy placed the truck in park before revving its engine again. Smith emerged from the Buick and stood up, looking at the truck, with his hands in his shirt. After staring for a brief interlude, Smith began running along the passenger side of the truck. As Smith ran next to the truck, Billy and Edwina heard shots being fired. One bullet entered the truck through the passenger-side window and exited through the driver's side. The bullet traveled "right in front of" Edwina's face, within inches of her head, and the couple ducked down in the passenger compartment. A second bullet hit the passenger side of the truck toward the rear of the vehicle. A third bullet struck the tailgate of the truck, traveling forward toward the passenger compartment. The cost to repair the truck was $2,822.14. Both Billy and Edwina

testified that the truck was parked while Smith shot at it and that Billy never drove the truck toward Smith.

After Smith fired the bullets and fled, Billy and Edwina called 911 and drove to the local police station. Police accompanied the couple back to the residence, where they discovered that a fourth bullet had struck and entered the Scotts' home. The damage to the residence cost $1,932.76 to repair. Items in the Buick had been moved around, and change was missing from the car.

Following the shooting, a neighbor showed Billy an image of a man that the neighbor had captured on a home security camera. Billy identified the man as the same one who had climbed out of the Buick and shot at his truck. Detective Scherer of the Suffolk Police Department also reviewed the image and identified the man pictured as Smith, with whom he was familiar.

After Detective Scherer identified Smith on the home security footage, Smith was arrested. Smith waived his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and told the police that he was the person found inside the Scotts' Buick, that he was in the car because he intended to steal money from it, and that he had a gun tucked under his arm while the Scotts were sitting in their truck. Smith claimed that Billy had driven the truck toward Smith and that Smith fired "warning shots" in his own defense. It is undisputed that Smith is a previously convicted felon prohibited from possessing a gun.

Sometime later, the Scotts saw Smith on television discussing the incident with a news reporter. In the interview, Smith claimed that Billy had "come at him full speed" in the truck. Smith also claimed that he fired "warning shots" at Billy and Edwina and that if he had intended "to hurt somebody, somebody would've been hurt." At trial, Detective Scherer testified that he had inspected the Scotts' lawn and saw there were indentions that indicated someone had driven across it, but there were no tire marks or ruts indicating that a vehicle had "spun out." Detective

Scherer testified that the tire marks in the Scotts' yard were consistent with what the couple told the police about what happened that evening.

Following a bench trial, at the conclusion of the Commonwealth's case, Smith made a motion to strike the evidence on the grounds that it was insufficient as a matter of law to convict him. He also submitted a motion to set aside the verdict, which was denied. Smith specifically argued that the evidence was insufficient to prove that he possessed the requisite specific intent for attempted murder and was insufficient to prove that he possessed the malice necessary for attempted murder and maliciously shooting into an occupied vehicle. During his closing argument and motion to strike, Smith acknowledged that he had possessed a gun and fired it. The circuit court denied Smith's motion to strike and convicted him, stating

> [H]e admitted that he shot at the car three times. It's just a matter of whether or not the [c]ourt is in agreement with his statement that he made on both the interview through the media and also the interview he gave Det. Scherer, or [sic] whether he had a justification for his actions[.]
>
> . . . .
>
> I didn't find anything incredible about what Mr. and Mrs. Scott said. . . . Mr. Smith got out of the car, stood there for a minute and looked at the parties in the car, and certainly is looking straight into the vehicle where there was no testimony other than the tint that's usually at the top of the vehicle that he couldn't tell there was two people in the car . . . . He took off running, firing his gun[, a]nd it's clear from the evidence[—]as I look at the pictures[—]that the gun, the bullets, you can tell by the deformation of the metal from these particular cases, and the ones that went through the window, that it was fired at that vehicle at a certain angle. Certainly, if Mr. Smith was afraid that someone was approaching him[,] the evidence doesn't show[,] just doesn't match up with his theories of the case and his evidence. If somebody was coming at me in a car, and I'm certainly saying that this would be what a regular person would do, you'd shoot right through the windshield. If they're coming at you that way[,] you're not going to run alongside and shoot, and then, as you run along behind the car, shoot back up at the car again. That just doesn't form up with the evidence in this particular case.

. . . I think it's clear that Mr. Smith was firing at the vehicle as he was running out of that area[. A]nd when you get into specific intent, [the c]ourt's always of the opinion, certainly malicious wounding and malicious intent is something that can be inferred from the circumstances and the evidence[. I]n this case . . . I think any time somebody takes a gun and points it at a car[,] they have a malicious intent. And certainly[,] if you fire a gun in a car, and you fire it in the passenger compartment, you have the specific intent to kill whoever is in that passenger compartment.

After listening to the arguments of counsel, the circuit court sentenced Smith to fifty-three years and sixty months of incarceration but suspended thirty-one years and sixty months, leaving an active sentence of twenty-two years. The circuit court conditioned Smith's suspended sentences on thirty years of supervised probation and a fifty-year period of good behavior. He was also ordered to pay $800 in restitution.

Smith timely appealed to this Court.

## II. ANALYSIS

### A. Standards of Review

Smith assigns ten errors on appeal, most of which are unnecessarily repetitive and some of which have been waived. They can be consolidated and summarized as follows.

Smith argues that the circuit court erred because the evidence was insufficient: 1) to show that he possessed the malice necessary to be convicted of attempted murder and malicious shooting into an occupied vehicle, 2) to show that he possessed the requisite specific intent to be convicted of attempted murder and, pursuant to that argument, he contends that the evidence was insufficient to convict him of use of a firearm in commission of the attempted murders, 3) to establish Smith's identity as the perpetrator of the crimes committed at the Scotts' home, 4) to convict him of tampering with a vehicle, and 5) to prove any of the remaining offenses charged, including possession of a firearm by a convicted felon, shooting in public, reckless handling of a firearm, and destruction of property.

Smith also argues that the circuit court erred by rejecting his testimony that he was shooting in self-defense because he feared for his life.

Finally, Smith argues that the circuit court abused its discretion when sentencing him.

## B. Sufficiency of the Evidence

On appeal, we review all but Smith's last two assignments of error listed above based on whether the evidence, when considered in the light most favorable to the Commonwealth, as the party that prevailed in the court below, was insufficient as a matter of law to support his convictions. "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). It is the fact finder's sole responsibility to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from proven facts because the fact finder alone has the opportunity to see and hear the witnesses. *See Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (citations omitted). The reason these determinations fall to the fact finder below and not the appellate court is because this Court knows "nothing of the evidence or of the witnesses, except as it appears on paper." *See id.* (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 832, 841 (1830)). As a result, this Court is in no position to decide the credibility of the witnesses, what weight to be given their testimony, and what reasonable inferences naturally flow from the proven facts; as such, we defer to

the circuit court's determinations so long as they are not plainly wrong or without evidence to support them. *See id.* at 20.

## 1. Maliciously Shooting at an Occupied Vehicle

The circuit court found Smith guilty of three counts of "maliciously shooting into an occupied vehicle." Smith argues that the circuit court erred because the Commonwealth did not prove that Smith had malicious intent and that only one of the shots he fired—the one that went into the passenger compartment of the vehicle—could be considered malicious.

With respect to Smith's argument that the Commonwealth failed to prove the element of malice, we note that malice has been "long defined" as "the doing of a wrongful act intentionally, or without just cause or excuse." *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019)). Malice may exist alongside and arise from anger, hatred, and revenge as well as "any other 'unlawful and [unjustified] motive.'" *Id.* (quoting *Martin v. Commonwealth*, 184 Va. 1009, 1015 (1946)). Malice may be express or implied. Implied malice may be inferred from "conduct likely to cause death or great bodily harm" that is willfully or purposefully undertaken. *See Essex v. Commonwealth*, 228 Va. 273, 280-81 (1984). "[I]mplied malice encapsulates 'a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice.'" *Watson-Scott*, 298 Va. at 256 (quoting *Essex*, 228 Va. at 288). Malice is evidenced either "when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). Malice may also be inferred from the "deliberate use of a deadly weapon unless, from all the evidence, [there is] reasonable doubt as to whether malice existed." *Id.* (quoting *Strickler v. Commonwealth*, 241

Va. 482, 495 (1991)). Ultimately, whether a defendant was acting maliciously "is a question of fact" to be determined by the trier of fact. *See Long v. Commonwealth*, 8 Va. App. 194, 198 (1989).

In *Logan v. Commonwealth*, 67 Va. App. 747, 752-53 (2017), Logan shot at a truck that he knew to be occupied. On appeal, Logan argued that the evidence failed to show that he acted with malice and instead contended that he merely fired accidentally or recklessly at the truck in order to damage it. *Id.* at 756. This Court affirmed the circuit court's finding that Logan did shoot maliciously at the vehicle, noting, "[t]he record is replete with facts supporting the trial court's determination—appellant threatened the victim, appellant pointed a firearm at the victim, and appellant then shot at the truck four times, narrowly missing the passenger's head." *Id.* Based on the record, this Court held that a rational fact finder could find Logan shot at the occupants of the truck with malice. *Id.*

Similarly, in this case, the fact finder was the circuit court, and it found that Smith knew Billy and Edwina were in the truck when he fired his gun into the vehicle. The evidence established that Smith fired his gun at the truck three times. The fact that the bullets passed through the passenger side and, eventually, the rear of the vehicle, supports the Scotts' testimony that Smith shot at them while he passed the side of the vehicle as he ran away. The fact that the bullets were shot through the passenger side of the vehicle also disproves Smith's argument that he shot at the truck in self-defense as it came toward him. As the circuit court noted, "If they're coming at you that way, you're not going to run alongside and shoot, and then, as you run along behind the car, shoot back at the car again. That just doesn't form up with the evidence in this particular case." Based on this record, we hold that a rational fact finder could conclude that Smith maliciously shot into an occupied vehicle three times.

Smith also argues that because only one bullet went into the passenger compartment, only one shot could possibly have been fired with malice. We disagree; Smith's distinction here is immaterial. Code § 18.2-154 provides that "[a]ny person who maliciously shoots *at . . .* any motor vehicles or other vehicles when occupied by one or more persons, whereby the life of any person . . . in such motor vehicle or other vehicle, may be put in peril, is guilty of a Class 4 felony." (Emphasis added). The statute criminalizes placing a person's life in peril by firing shots at, not merely into, an occupied vehicle. Additionally, in *Watson-Scott*, the Supreme Court of Virginia held that firing multiple shots from a handgun down a city street was unlawful and without justification and, as such, was sufficient to find a defendant guilty of implied malice. 298 Va. at 257-58. The *Watson-Scott* Court held that it "is patently obvious that firing multiple shots from a handgun in the middle of a populous city" constituted legal malice. *Id.* at 258. Here, where the defendant fired a deadly weapon at the passenger compartment of a vehicle that the defendant knew to be occupied, the evidence was sufficient to establish implied malice for all three shots, and the circuit court did not err.

## 2. Self-Defense is an Affirmative Defense

Smith argues that he was justified in shooting at the truck because he feared for his life. Self-defense is an affirmative defense that places the burden of persuasion on the accused to demonstrate to the fact finder that he acted in self-defense to the degree necessary to raise a reasonable doubt about his guilt. *See Lynn v. Commonwealth*, 27 Va. App. 336, 352 (1998). "Although undisputed facts may establish self-defense as a matter of law, whether the accused establishes that he or she acted in either respect is generally a question of fact." *See id.* at 353 (internal citations omitted). This Court reviews a circuit court's application of the law to the facts *de novo*. *See Watson-Scott*, 298 Va. at 255 (quoting *Kim v. Commonwealth*, 293 Va. 304,

- 9 -

311-12 (2017)). Where the facts are disputed, as noted above, we defer to the circuit court's judgment regarding questions of fact and credibility of witnesses. *See McNeal*, 282 Va. at 22.

A defendant must "reasonably fear death or serious bodily harm" to be entitled to use potentially lethal force in self-defense. *Meade*, 74 Va. App. at 807 (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). Critically, a defendant who used potentially lethal force in the name of self-defense must show that he was in "imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety." *Id.* (quoting *Hines v. Commonwealth*, 292 Va. 674, 679 (2016)).

Smith maintains that the Scotts' truck was "barreling toward him" and he shot "warning shots" at the truck in self-defense. As stated above, the circuit court did not credit Smith's self-defense narrative and found that there was no imminent danger that posted an immediate threat to Smith's safety.[1] Police testimony established that the tire marks in the Scotts' yard corroborated Billy and Edwina's testimony that the truck had not been used aggressively. Billy and Edwina testified that their truck was parked between five and seven feet away from the car and they were simply sitting in the truck when Smith got out of the Buick, stood and looked at them, and then began running and shooting. As noted, the circuit court found the location of the bullet entries in the vehicle instructive regarding whether Smith's account that the truck was driving toward him was accurate. Additionally, Smith's claim that he was firing "warning shots" at the truck that held the Scotts does not support his theory of self-defense; if anything, it is evidence that the act of shooting was deliberate and the result of a "formed design," which would constitute express malice. *See Williams v. Commonwealth*, 64 Va. App. 240, 248 (2015). The

---

[1] Because the circuit court, as the fact finder, did not find Smith's claim of self-defense credible, it did not—and we need not—determine whether the facts support the legal requirements for either justifiable self-defense or excusable self-defense under the circumstances presented here. *See Jones v. Commonwealth*, 71 Va. App. 70, 94-96 (2019).

- 10 -

circuit court's finding that Smith was never in imminent danger of harm was reasonable. The circuit court's determination that Smith was not reasonably in fear of death or bodily injury was not plainly wrong nor was it without supporting evidence; as such, we will not disturb its decision on appeal. See *Chavez*, 69 Va. App. at 161.

### 3. Attempted Murder

Smith argues that the evidence was insufficient to convict him of attempted murder of Billy and Edwina and, pursuant to that argument, he also argues that the circuit court erred in finding Smith guilty of two counts of use of a firearm in commission of the attempted murders. First, we note that the issue upon appellate review is not whether there was some evidence to support Smith's hypotheses, but rather whether a reasonable fact finder, upon consideration of all the evidence, could have rejected Smith's theories and found him guilty of attempted murder beyond a reasonable doubt. See *Coles v. Commonwealth*, 270 Va. 585, 589 (2005).

"An attempt to commit a crime is composed of the intent to commit it and a direct but ineffectual act done towards its commission." *Id.* A defendant cannot be guilty of an attempt to commit murder unless he possessed the specific intent to kill another person. See *Baldwin v. Commonwealth*, 274 Va. 276, 280 (2007). At trial, the Commonwealth bore the burden of proving beyond a reasonable doubt that Smith formed the intent to kill Billy and Edwina by firing his gun at them. See *id.* Intent is defined as the purpose formed in a defendant's mind, which may be shown by circumstantial evidence. See *Coles*, 270 Va. at 590. Circumstantial evidence of intent necessarily includes the defendant's conduct. *Green v. Commonwealth*, 266 Va. 81, 104 (2003). "Premeditation is an intent to kill that needs to exist only for a moment." *Id.* Whether premeditation exists is generally a factual issue to be determined by the fact finder at trial—here, the circuit court. *Id.*

In the present case, the evidence showed that Smith got out of the Buick and paused, looking at the Scotts through the windshield of their truck. The evidence also showed that the windshield glass was not tinted, save for a small strip at the very top of the windshield. After pausing and looking directly at the Scotts, Smith began running and shot his gun at the passenger compartment of the vehicle. Smith's intent to kill only needed to exist for a moment, and the evidence shows that he paused and looked at the Scotts before firing a deadly weapon at them. He continued to shoot at the truck as he ran; the final bullet fired at the vehicle entered through the tailgate and traveled in the direction of the passenger compartment. Firing a deadly weapon at someone can be evidence that the defendant intended to kill, as it is reasonable to "infer that every person intends the natural and probable consequences of his or her acts." *Thomas v. Commonwealth*, 279 Va. 131, 166 (2010) (quoting *Schmitt v. Commonwealth*, 262 Va. 127, 145 (2001)). Essentially, the circuit court, sitting as fact finder, was entitled to reject Smith's view of the evidence and conclude that Smith had indeed acted with intent to kill when he shot at the Scotts. *Schmitt*, 262 Va. at 143. The circuit court did not err in finding the evidence sufficient to convict Smith of attempted murder of both Billy and Edwina and, as a result, it also did not err in finding Smith guilty of two counts of use of a firearm in commission of those felonies.[2]

---

[2] Despite expressing no disagreement with our analysis here, our concurring colleague would affirm based on the circuit court reaching "the right result for the wrong reason." We express no opinion regarding whether the concurrence is correct in that conclusion because it is based upon an issue not raised in the circuit court, not assigned as error on appeal, and neither briefed nor orally argued by the parties; thus, that conclusion represents an improper advisory opinion by our colleague. *See Va. Dep't of State Police v. Elliott*, 48 Va. App. 551, 553-54 (2006) (noting the Court's "duty 'not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it'" (quoting *Hankins v. Town of Va. Beach*, 182 Va. 642, 644 (1944))); *see also Ingram v. Commonwealth*, 62 Va. App. 14, 22 (2013) ("'Advisory opinions represent an attenuate exercise of judicial power,' 'one which we traditionally avoid in all but the most extenuating circumstances.'" (first quoting *Elliott*, 48 Va. App. at 553; then quoting *Pilson v. Commonwealth*, 52 Va. App. 442, 446 (2008))).

## 4. Identity

Smith also argues that the evidence was insufficient to prove his identity as the perpetrator of the crimes. The record contains a significant amount of evidence establishing Smith's identity, including footage from a voluntary television interview during which Smith confirmed that he was present at the Scotts' home on the night of the shootings and that he had fired "warning shots." During interviews with police, Smith also admitted that he was the perpetrator of the shootings and that he had been in the Scotts' Buick in their driveway. Smith's image was captured by a neighbor's home security camera on the night of the shootings. Finally, at the trial, Billy and Edwina positively identified Smith as the man that they saw climb out of their Buick and stared at them in the truck before shooting. Here, there was considerable evidence establishing Smith's identity as the shooter and the circuit court did not err in so concluding.

---

Moreover, the concurrence conflates the elements of attempted murder with the elements of maliciously shooting at an occupied vehicle, but the two are separate and distinct crimes. Here, Smith was convicted of two counts of attempted murder, pursuant to Code §§ 18.2-26, 18.2-30, and 18.2-32, and three counts of maliciously shooting at an occupied vehicle, pursuant to Code § 18.2-154. Attempted murder and maliciously shooting at an occupied vehicle are separate crimes with different elements. The concurrence points out that under Code § 18.2-154, someone who maliciously shoots at an occupied vehicle and causes the death of another is guilty of second-degree murder, which does not require a specific intent to kill. *See* Code § 18.2-154; *see also Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012). That is correct, although we note that the very next sentence of Code § 18.2-154 explicitly states, "if the homicide is willful, deliberate, and premeditated, [the offender] is guilty of murder in the first degree." At any rate, it does not matter here because here, Smith's crime of maliciously shooting at an occupied vehicle did not result in a death; therefore, under Code § 18.2-154 he was *only* guilty of maliciously firing at the Scotts' truck. As the concurrence itself states, the crime of attempted murder requires specific intent to kill a victim coupled with an overt but ineffectual act in furtherance of that purpose. *See Coles*, 270 Va. at 589-90. Here, the fact finder permissibly inferred that Smith intended to kill the Scotts when he shot at them in their truck, fulfilling the first element of attempted murder. Second, neither Billy nor Edwina was ultimately killed by Smith's shots, meaning that Smith's overt acts were ineffective. As a result, the circuit court did not err by convicting Smith of two counts of attempted murder, and those convictions are unrelated to his convictions for maliciously shooting at an occupied vehicle.

## 5. Tampering

Smith argues that the evidence was insufficient to convict him of tampering with a vehicle because the evidence did not show that Smith had the intent to do so. Assuming without deciding that Smith properly preserved the issue below, the evidence at trial was sufficient for a fact finder to reasonably conclude that Smith was guilty of vehicle tampering.

Code § 18.2-147, titled "Entering or setting in motion, vehicle," states that any person who, without the consent of the vehicle's owner, "climb[s] into or upon such vehicle . . . with intent to commit any crime, malicious mischief, or injury thereto . . . shall be guilty of a Class 1 misdemeanor." Neither Billy nor Edwina gave Smith permission to enter their Buick. Smith admitted in interviews with police officers that he entered the Scotts' Buick with the intent to steal valuables or money, stating, "I came out there to steal for [sic] some cars to get a little bit of money." In sum, the record supports the circuit court's conclusion that Smith was guilty of violating Code § 18.2-147 and we will not disturb its judgment on appeal.

## C. Discretion in Sentencing

Smith argues that the circuit court abused its discretion when sentencing him. Smith contends that the circuit court failed to consider various influences, including his substance abuse, record of theft to support his addictions, mental health disorders, home environment, and other factors. He further argues that the circuit court committed a clear error of judgment because the above factors "should have weighed in favor in [sic] a more lenient sentence."

Smith acknowledges that he failed to object at the sentencing hearing but asks this Court to hear his argument pursuant to the good cause and ends of justice exceptions to Rule 5A:18, which states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." In considering whether to

apply either of these exceptions to Rule 5A:18, we note that Smith has not advanced any reasons

he asserts as "good cause" for his failure to object and with respect to the "ends of justice

exception" to the rule, we note that a circuit court clearly acts within the scope of its sentencing

authority "when it chooses a point within the permitted statutory range at which to fix

punishment." *Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v.

Commonwealth*, 274 Va. 759, 771 (2007)). "Consequently, 'when a statute prescribes a

maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence

will not be overturned as being an abuse of discretion.'" *Id.* (quoting *Alston*, 274 Va. at 771-72).

Virginia appellate courts adhere to "the general proposition that once it is determined that a

sentence is within the limitations set forth in the statute under which it is imposed, appellate

review is at an end." *Id.* (quoting *Dorszynski v. United States*, 418 U.S. 424, 431 (1974)). The

sentencing orders show that Smith's punishments did not exceed statutory sentencing

maximums.[3] He argues solely that the circuit court erred in how it weighed and considered

relevant sentencing factors. Because none of Smith's sentences exceed the relevant statutory

maximums, the record simply does not establish that the "ends of justice exception" to Rule

5A:18 applies.

---

[3] At the sentencing hearing, the circuit court sentenced Smith to twenty years of imprisonment with fifteen years suspended for each of the attempted murder charges. The statutory maximum for attempted second-degree murder is ten years, so the circuit court's oral sentence pronouncement did indeed exceed its authority. *See* Code §§ 18.2-10(d), -26, and -32. The written sentencing orders, however, sentenced Smith to ten years of incarceration with five years suspended for each of the attempted murder charges. The circuit court speaks through its written orders as of the day they were entered, so, we presume that the written sentencing orders, not the oral pronouncement, control. *See Johnson v. Johnson*, 72 Va. App. 771, 779 (2021). The maximum sentence allowable for Smith's attempted murder charges is ten years, so his ultimate sentences were not excessive.

- 15 -

D. Waived Evidentiary Arguments

Smith also asserts that the evidence was insufficient to convict him of possession of a firearm by a convicted felon, three counts of shooting in public, and reckless handling of a firearm. He also asserts that the evidence was insufficient to convict him of destruction of property because the evidence did not establish the value of the property. Smith did not preserve any of these arguments below. Rule 5A:18 "require[s] that objections be promptly brought to the attention of the trial court with *sufficient specificity* that the alleged error can be dealt with and timely addressed and corrected when necessary." *Scott v. Commonwealth*, 58 Va. App. 35, 45 (2011) (emphasis added) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 218 (2004) (*en banc*)). Smith had ample opportunity to raise his objections regarding the sufficiency of the evidence undergirding these charges to the circuit court but chose not to do so. On appeal, he does not ask us to apply the ends of justice exception, and we will not consider doing so *sua sponte*. *See Merritt v. Commonwealth*, 69 Va. App. 452, 461 (2018). We consider Smith's arguments regarding his convictions for felony possession of a firearm, shooting in public, reckless handling of a firearm, and destruction of property charges waived due to lack of preservation below.

III. CONCLUSION

For the reasons listed above, we find that the circuit court did not err in finding the evidence sufficient to convict Smith of maliciously shooting into an occupied vehicle, attempted murder, and tampering with a vehicle. We also find that the circuit court did not err in finding the evidence sufficient to establish Smith's identity as the perpetrator of these crimes.

*Affirmed.*

- 16 -

Chaney, J., concurring.

I concur in the Court's judgments affirming Smith's convictions.  I write separately because I conclude that Smith's convictions for attempted murder and malicious shooting at an occupied vehicle should be affirmed under the right result for the wrong reason doctrine.  In ruling on Smith's argument that the evidence is insufficient to support convictions for attempted murder and malicious shooting at an occupied vehicle, the trial court erred in (i) ruling that the act of firing a gun into the passenger compartment of a vehicle is necessarily coupled with the specific intent to kill the passengers therein and (ii) ruling that the act of pointing and shooting a gun at an occupied vehicle is necessarily coupled with malicious intent.[4]  However, because a rational fact-finder could find that the evidence proved the essential elements of the offenses when the evidence is considered in the light most favorable to the Commonwealth, the party prevailing below, I concur in the Court's judgments that the evidence is sufficient to sustain the convictions.

I. STANDARD OF REVIEW

On appellate review of a criminal conviction, this Court "consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." *Pooler v. Commonwealth*, 71 Va. App. 214, 218 (2019) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (*en banc*)).  We "discard the evidence of the accused *in conflict* with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (emphasis added) (quoting

---

[4] Smith challenged the sufficiency of evidence in the trial court, and Smith appealed the trial court's rulings that the evidence is sufficient to support the convictions.  On appellate review of the trial court's rulings on Smith's sufficiency arguments, the trial court's stated reasons for its rulings are necessarily at issue.  However, the majority does not address the trial court's stated basis for ruling that the evidence is sufficient to prove that Smith shot at the Scotts' occupied vehicle maliciously and with the specific intent to kill the occupants.

- 17 -

*Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).  The conviction will be affirmed "unless it is plainly wrong or without evidence to support it."  *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021) (quoting *Austin v. Commonwealth*, 60 Va. App. 60, 65 (2012)).

"[W]here a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused]."  *Wright v. Commonwealth*, 292 Va. 386, 397 (2016) (alterations in original) (quoting *Commonwealth v. Smith*, 259 Va. 780, 782 (2000)).

"[W]here, as here, a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"  *Garland v. Commonwealth*, 225 Va. 182, 184 (1983) (quoting *Carter v. Commonwealth*, 223 Va. 528, 532 (1982)).  "While a conviction may properly be based upon circumstantial evidence, suspicion or even *probability of guilt is not sufficient*."  *Gordon v. Commonwealth*, 212 Va. 298, 300 (1971) (emphasis added).

## II.  THE RIGHT RESULT FOR THE WRONG REASON DOCTRINE

"Under the right result for the wrong reason doctrine, 'it is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons.'"  *Perry v. Commonwealth*, 280 Va. 572, 579 (2010) (alterations in original) (quoting *Schultz v. Schultz*, 51 Va. (10 Gratt.) 358, 384 (1853)).  The right result for the wrong reason doctrine is appropriately applied only when the development of additional facts is not necessary.  *Id.*

## III.  ATTEMPTED MURDER

"To prove the crime of attempted murder, the evidence must show a specific intent to kill the victim which is coupled with some overt but ineffectual act in furtherance of this purpose."  *Hargrave v. Commonwealth*, 214 Va. 436, 437 (1974).  To prove that a defendant acted with

- 18 -

specific intent to kill, "[i]t is not sufficient that his act, had it been fatal, would have been murder." *Hancock v. Commonwealth*, 12 Va. App. 774, 782 (1991) (quoting *Merritt v. Commonwealth*, 164 Va. 653, 661 (1935)); *see also Thacker v. Commonwealth*, 134 Va. 767, 771-72 (1922).

The trial court found that the evidence was sufficient to prove that Smith had the specific intent to kill Mr. and Mrs. Scott, pronouncing that "certainly if you fire a gun in a car, and you fire it in the passenger compartment, you have the specific intent to kill whoever is in that passenger compartment." By this pronouncement, the trial court ruled that as a matter of law, proof that a defendant fired a gun into the passenger compartment of a vehicle suffices to prove that the defendant fired the gun with the specific intent to kill all occupants of the vehicle.

The trial court's stated basis for ruling that the evidence is sufficient to prove Smith had the specific intent to kill is erroneous because, as a matter of law, the act of firing a gun into the passenger compartment of a vehicle is not necessarily coupled with the specific intent to kill the passengers therein. In prohibiting shooting into an occupied vehicle, the General Assembly identified a class of homicides resulting from such shooting as homicides committed without the specific intent to kill. Under Code § 18.2-154, if a shooting at an occupied vehicle is malicious and results in the death of any passenger, "the person so offending is guilty of murder in the second degree." "Second-degree murder does not require a specific intent to kill." *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012). Code § 18.2-154 further provides that a homicide resulting from a malicious shooting at an occupied vehicle constitutes first-degree murder if it "is willful, deliberate, and premeditated[.]"[5] "[P]remeditation and deliberation . . . require the

_____

[5] Code § 18.2-154 further provides that "[i]f any such [shooting at an occupied vehicle] is committed unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony and, in the event of the death of any such person, resulting from such unlawful act, the person so offending is guilty of involuntary manslaughter."

- 19 -

adoption of a specific intent to kill." *Jordan v. Commonwealth*, 50 Va. App. 322, 328 (2007) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982)); *see also Smith v. Commonwealth*, 220 Va. 696, 700 (1980) ("To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder."). Because the General Assembly has identified a class of homicides by malicious shooting at an occupied vehicle as second-degree murder—lacking the specific intent to kill—the trial court erred in concluding that Smith's act of shooting into the passenger compartment of the Scotts' vehicle necessarily implied that Smith had the specific intent to kill the Scotts.

Although the act of shooting into an occupied vehicle does not necessarily imply that the shooter intended to kill the vehicle's occupants, the evidence here provides a basis for a rational fact-finder to conclude that Smith fired the gun with the specific intent to kill the Scotts. As the majority opinion notes, Smith paused before shooting, looked directly at the Scotts, and fired multiple shots at the Scotts. Because this evidence is sufficient to support a finding that Smith attempted to kill the Scotts, I concur in the Court's judgment affirming Smith's convictions for attempted murder.

IV. MALICIOUS SHOOTING AT OCCUPIED VEHICLE

The trial court found that Smith maliciously shot at the Scotts' occupied vehicle, pronouncing that "any time somebody takes a gun and points it at a car they have a malicious intent." By this pronouncement, the trial court ruled that as a matter of law, proof that a defendant pointed and fired a gun at an occupied vehicle suffices to prove that the defendant did so with malicious intent.

The trial court's stated basis for ruling that the evidence is sufficient to prove Smith acted maliciously in shooting into the Scotts' occupied vehicle is erroneous because, as a matter of law, the act of pointing and shooting a gun at an occupied vehicle is not necessarily coupled with

malicious intent. The General Assembly has identified a class of non-malicious shootings-at-an-occupied-vehicle. Code § 18.2-154, in relevant part, provides:

> Any person who *maliciously* shoots at . . . any motor vehicle or vehicles when occupied by one or more persons, whereby the life of any person . . . in such other motor vehicle or other vehicle, may be put in peril, is guilty of a Class 4 felony. . . . If any such act is committed *unlawfully, but not maliciously*, the person so offending is guilty of a Class 6 felony.

(Emphasis added). An example of an unlawful, non-malicious shooting at an occupied vehicle would be a shooting done in the heat of passion. "Heat of passion excludes malice when *provocation reasonably produces fear* . . . that causes one to act on impulse without conscious reflection." *Witherow v. Commonwealth*, 65 Va. App. 557, 568 (2015) (emphasis and alteration in original) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)).

Although the act of shooting into an occupied vehicle does not necessarily imply that the shooter acted maliciously, the evidence here provides a basis for a rational fact-finder to conclude that Smith maliciously shot the gun at the Scotts' occupied vehicle. As the majority opinion notes, a rational fact-finder could conclude that Smith knew that the Scotts' truck was occupied when he fired multiple shots at the truck while running past the truck's passenger side. Because this evidence is sufficient to support a finding that Smith maliciously shot at the Scotts' truck, I concur in the Court's judgment affirming Smith's convictions for maliciously shooting at an occupied vehicle.